Kelly, J.
This case arises out of a dispute over no-fault benefits. Plaintiff Randall Ross was injured in an automobile accident and submitted a claim for work-loss benefits to defendant Auto Club Group, his no-fault insurer. Defendant denied plaintiffs claim, prompting him to file this lawsuit. The trial court not only awarded plaintiff benefits, but also awarded attorney fees. The Court of Appeals affirmed.
We granted defendant’s application for leave to appeal. We hold that the trial court properly awarded plaintiff work-loss benefits. But it clearly erred when deciding that defendant’s refusal to pay benefits was not based on a legitimate question of statutory interpretation. As a consequence, we affirm the Court of Appeals judgment that plaintiff is entitled to work-loss benefits, but reverse its affirmance of the award of attorney fees.
I. PACTS
Plaintiff was injured in an automobile accident. At the time of the accident, he was the sole shareholder and sole employee of Michigan Packing Company, Inc. Plaintiff had incorporated this entity under the Busi *5 ness Corporation Act (BCA)[1] and, for federal tax purposes, had filed an election under subchapter S of the Internal Revenue Code.[2]
As a result of his injuries, plaintiff was unable to work. He made a claim to defendant for work-loss benefits. In support of his claim, plaintiff provided defendant with W-2 forms showing that Michigan Packing had paid plaintiff wages in 2001 through 2003.[3]
Defendant denied plaintiffs claim. It relied on the benefit-calculation methodology set forth by the Court of Appeals in Adams v Auto Club Ins Ass’n.[4] Defendant concluded that plaintiff had failed to establish a claim for lost income because Michigan Packing operated at a loss during the years at issue.[5]
Plaintiff filed this lawsuit on May 6, 2004. The trial court granted his motion for summary disposition, ruling that he was entitled to work-loss benefits based on his wages. The court also awarded attorney fees under MCL 500.3148(1), the no-fault act’s attorney-fee provision. It found that defendant had unreasonably delayed making payment to plaintiff. Defendant moved for reconsideration. The trial court denied the motion, and defendant appealed in the Court of Appeals.
*6 The Court of Appeals affirmed in a published opinion.[6] It held that the trial court had properly rejected the benefit-calculation methodology proposed by defendant and had correctly granted benefits based on plaintiffs wages.[7] The Court of Appeals also held that the trial court had not clearly erred by awarding attorney fees.[8] It found defendant’s denial unreasonable because defendant had relied on a case having facts dissimilar to those of this case. Moreover, plaintiff had supplied W-2 forms supporting his claim.[9] The Court denied defendant’s motion for reconsideration.
Defendant applied for leave to appeal in this Court. Initially, we denied the application, but later granted defendant’s motion for reconsideration. On March 7, 2007, this Court heard oral argument concerning whether “the Court of Appeals correctly affirmed the trial court’s award of attorney fees to plaintiff pursuant to MCL 500.3148(1).”[10] After hearing argument on the application, we granted leave to appeal to consider both the attorney-fee issue and the benefits issue.[11]
II. STANDARD OF REVIEW
This case requires us to decide whether the lower courts properly interpreted the no-fault act in determining that plaintiff is entitled to work-loss benefits. Issues of statutory interpretation are reviewed de novo.[12]
*7 We also review the award of attorney fees. The no-fault act provides for attorney fees when an insurance carrier unreasonably withholds benefits.[13] The trial court’s decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant’s denial of benefits is reasonable under the particular facts of the case is a question of fact.[14]
Whereas questions of law are reviewed de novo, a trial court’s findings of fact are reviewed for clear error.[15] A decision is clearly erroneous when “the reviewing court is left with a definite and firm conviction that a mistake has been made.”[16]
III. WORK-LOSS BENEFITS
The issue concerning work-loss benefits is one of first impression. It is whether someone can recover work-loss benefits under MCL 500.3107(l)(b) if he or she is the sole employee and shareholder of a subchapter S corporation that lost more money than it paid in wages. Defendant contends that plaintiff, who is such a person, is not entitled to benefits. Defendant points out that a subchapter S corporation’s profits and losses pass through to the shareholders for tax purposes. Accordingly, it argues, plaintiff should be treated like an unincorporated sole proprietor, which means that, when his income is calculated, his gross receipts must be reduced by his business expenses. The Court of Appeals rejected this argument.
*8 In holding that the corporation’s losses were irrelevant to computing plaintiffs work-loss benefits, the Court of Appeals stated:
In this case, there is no dispute that (1) plaintiff received wages as an employee of the corporation and (2) plaintiff s remuneration from the corporation was not determined on the basis of the annual net income of the corporation. Plaintiff did not assert a work-loss claim based on the lost profits of the corporation. These facts distinguish this case from Adams. We reject defendant’s argument that plaintiffs self-employment status dictates a calculation of the gross receipts of the corporation less the corporate expenses to determine plaintiffs net income. We emphasize that plaintiff as an individual received wages and was not remunerated on the basis of the gross receipts of the corporation. Defendant presents no evidence to justify the disregard of the long-held rule that “ ‘[t]he corporate entity is distinct although all its stock is owned by a single individual or corporation.’ ” Moreover, “[a corporation’s] separate existence will be respected, unless doing so would subvert justice or cause a result that would be contrary to some other clearly overriding public policy.” Because plaintiff received wages from the corporation, and because defendant has presented no evidence to the contrary, the business expenses of the corporation are irrelevant in calculating plaintiffs wage loss, and plaintiff is treated as being in no different position than an employee of any other corporation operating at a loss. The trial court correctly determined that plaintiff was entitled to work-loss benefits and properly granted his motion for summary disposition.[17]
We conclude that the Court of Appeals reached the right result for the right reasons. Accordingly, we affirm its decision and hold that plaintiff is entitled to work-loss benefits based on his wages.
*9 Justice CORRIGAN argues in her partial dissent that defendant has created a factual question regarding the amount of plaintiffs loss of income from work. This ignores the legitimate distinction between a shareholder and the corporate entity that is established by Michigan law. What Justice CORRIGAN says about the nature of a subchapter S corporation is true: for federal income taxation purposes, the income and losses of a subchapter S corporation pass through to the individual shareholders as if the income and losses belonged to the members of a partnership. But her “income” analysis errs by suggesting that the blurring of corporate and shareholder identities for federal taxation purposes also blurs the separate legal identities created for those entities by the BCA. Indeed, the authority she relies on made clear that, for federal taxation purposes alone, a subchapter S corporation is merely analogous to a partnership or a sole proprietorship.
There is no authority for Justice CORRIGAN’s proposition that the distinct corporate identity created by Michigan law may be ignored. The corporation’s income or losses are not the shareholder’s income or losses for purposes of the no-fault act’s work-loss-benefits provision. Neither the BCA nor the no-fault act supports her analysis. Thus, her statement that “plaintiff and his wife had no taxable income in 2001, 2002, and 2003”[18] entirely misses the central point: regardless of whether he was subject to taxation under federal law, plaintiff indisputably received actual income in the form of W-2 wages in those years. Justice CORRIGAN seems to ignore the import of her own observation that “plaintiffs work as the sole employee of his corporation resulted in no income — but only overall lossés — to the *10 corporation.”[19] The losses ultimately belonged to the corporation, not to plaintiff.
At its core, Justice CORRIGAN’s position would accomplish a de facto piercing of the corporate veil. It would do this even though the shareholder had not engaged in fraudulent or wrongful conduct that would justify a court’s ignoring the corporate form. It would punish plaintiff for filing an election under subchapter S, a legitimate designation that permits him to report a loss for federal taxation purposes. Justice CORRIGAN indulges in speculation that defendant created a question of material fact to defeat summary disposition under MCR 2.116(0(10). And she fails to explain how the undisputed proof of plaintiffs wages is an inaccurate reflection of his loss of income from work and how the corporation’s losses could possibly diminish that figure.[20]
W. ATTORNEY FEES
The second issue is whether the award of attorney fees was proper.[21] The no-fault act provides for an award *11 of reasonable attorney fees to a claimant if the insurer unreasonably refuses to pay the claim. Specifically, MCL 500.3148(1) provides:
An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney’s fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.
The purpose of the no-fault act’s attorney-fee penalty provision is to ensure prompt payment to the insured.[22] Accordingly, an insurer’s refusal or delay places a burden on the insurer to justify its refusal or delay.[23] The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty.[24]
The trial court correctly set forth this rule of law in determining that plaintiff was entitled to attorney fees. The issue is whether it clearly erred in applying this rule and finding that defendant’s refusal was not based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. The determinative factor in our inquiry is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable.
Plaintiff sought work-loss benefits under MCL 500.3107(l)(b), which states:
*12 (1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured.
In order to be entitled to benefits under this section, a plaintiff must suffer a loss of income.
Plaintiff in this case provided W-2 forms and asserted that they adequately represented his income. He made this claim despite the fact that he was the sole shareholder and sole employee of a subchapter S corporation that had lost more money then it paid him in wages. Defendant asserted that corporate losses must be considered when calculating “income” for a sole shareholder who is also the sole employee. Defendant’s argument presents an issue of first impression. In support of the argument that plaintiff was not entitled to work-loss benefits, defendant relied on the Court of Appeals decision in Adams v Auto Club Ins Ass’n.
In Adams, a motor vehicle accident permanently disabled the plaintiff. At the time of the accident, he was a self-employed cosmetologist who worked as an independent contractor. He paid 41 percent of his weekly gross revenue as chair rental and was also required to pay all of his own business expenses, including expenses for supplies and materials. When he applied for work-loss benefits after the accident, the defendant insurance company initially approved the payment of 85 percent of the plaintiffs average daily gross receipts. Approximately one year later, however, the defendant decided that the plaintiff was entitled to only 85 percent of his net receipts. The plaintiff brought suit, claiming that *13 benefits should be calculated on the basis of his average daily gross receipts. The defendant argued that it should be allowed to deduct the plaintiffs business expenses in calculating his work-loss benefits.[25]
The Court of Appeals began its analysis in Adams by noting that the issue to be decided was the proper method for calculating work-loss benefits under MCL 500.3107(l)(b).[26] The Court noted that the statute allows an injured party to collect benefits for “loss of income” but does not define that phrase.[27] The Court of Appeals examined the statutory language, Michigan precedent, and decisions from sister states. It decided that, under the facts of the case, the term “loss of income” contemplated deducting the plaintiffs business expenses from his gross income in order to determine his work-loss benefits.[28] The Court determined that this procedure was necessary to avoid awarding the plaintiff more in benefits than he would have taken home from his job had he been able to work.[29] The Court was satisfied that this result was consistent with the no-fault act’s goal of placing individuals in the same, but no better, position than they were before their accidents.[30]
In this case, defendant relied on Adams. It argued that, because plaintiff was the sole shareholder and employee of Michigan Packing and the company lost more than it paid plaintiff in wages, plaintiff was not entitled to work-loss benefits. He suffered no loss of income. Defendant asserted that the benefit-calculation *14 methodology set forth in Adams applies whenever a self-employed person is involved. Its theory was that, because a self-employed individual is solely responsible for profits and losses, the losses should be considered when determining whether there was a loss of income. Otherwise, defendant contended, plaintiff will end up in a better position financially than he was before the accident.
We acknowledge that this case differs from Adams in that the plaintiff in Adams was an unincorporated independent contractor, whereas Michigan Packing is incorporated. However, the inquiry is not whether defendant is responsible for the benefits, but only whether defendant’s refusal to pay them was unreasonable. As defendant points out, a subchapter S corporation does not pay income taxes; the business’s profits and losses pass through to the owners.[31] Accordingly, because the profits and losses of Michigan Packing belonged to plaintiff for tax purposes, just as they belonged to the plaintiff in Adams, defendant’s reliance on Adams was reasonable. Adams is not directly on point, and, ultimately, we do not extend its reasoning to the facts of this case. Nonetheless, we conclude that the trial court clearly erred in deciding that defendant’s argument was not based on a legitimate question of statutory interpretation.
As the Court of Appeals acknowledged, how to calculate the “income” of an individual in plaintiffs situation for the purpose of determining work-loss benefits is an issue of first impression.[32] Because MCL 500.3107(l)(b) does not define the term “loss of income,” we conclude that it was reasonable for defen *15 dant to rely on the factually similar Adams decision. Its position that, in calculating plaintiffs loss of income, the losses suffered by Michigan Packing should be subtracted from the wages paid to plaintiff had support in law and fact.
V CONCLUSION
The issues we decide in this case are whether plaintiff was properly awarded work-loss benefits and whether defendant’s refusal to pay work-loss benefits was reasonable. The trial court held that plaintiff was entitled to benefits. It also awarded attorney fees after finding that defendant’s refusal to pay benefits was not reasonable. The Court of Appeals affirmed on both issues. We affirm the award of benefits but reverse the award of attorney fees. Although defendant was ultimately responsible for paying the benefits, its refusal to pay was not unreasonable. Defendant relied on a factually similar Court of Appeals decision to adopt a reasonable position on an issue of first impression.
Taylor, C.J., and Cavanagh and Young, JJ., concurred with Kelly, J.

 MCL 450.1101 et seq.

 Subchapter S of the Internal Revenue Code, 26 USC 1361 through 1379, allows a qualifying corporation to avoid federal taxation at the corporate level, instead creating a “pass-through” of income that is taxed at the shareholder level. Chocola v Dep’t of Treasury, 422 Mich 229, 236; 369 NW2d 843 (1985).

 Michigan Packing paid plaintiff wages of $16,200 in 2001, $11,250 in 2002, and $12,150 in 2003.

 Adams v Auto Club Ins Ass’n, 154 Mich App 186; 397 NW2d 262 (1986).

 Michigan Packing lost $21,828 in 2001, $28,179 in 2002, and $35,208 in 2003.

 Ross v Auto Club Group, 269 Mich App 356; 711 NW2d 787 (2006).

 Id. at 361-362.

 Id. at 362.

 Id. at 363-364.

 477 Mich 960 (2006).

 478 Mich 902 (2007).

 People v Barbee, 470 Mich 283, 285; 681 NW2d 348 (2004).

 MCL 500.3148(1).

 See Sweebe v Sweebe, 474 Mich 151, 154; 712 NW2d 708 (2006).

 Id.

 Kitchen v Kitchen, 465 Mich 654, 661-662; 641 NW2d 245 (2002).

 Ross, 269 Mich App at 361-362 (emphasis in original; citations omitted).

 Post at 20.

 Post at 20.

 As noted in footnote 3 of this opinion, plaintiff received at least $11,250 in each of the tax years in question. Thus, as a result of his work for the corporation, plaintiff earned at least $11,000 annually for his own benefit. Presumably plaintiff also paid employment taxes on these W-2 wages, such as payroll taxes under the Federal Insurance Contributions Act, also known as FICA. Justice Corrigan does not attempt to explain how the corporation’s losses had any effect on the $11,000 in plaintiffs bank account.

 Plaintiff argues that defendant has waived this claim by acquiescing in the entry of the trial court’s March 7, 2005, final judgment. This argument has no merit. Defendant has consistently objected to the award of attorney fees. Defendant’s approval of the entry of the judgment did not transform the disputed issue into an unappealable settlement or consent judgment. See Ahrenberg Mechanical Contracting, Inc v Howlett, 451 Mich 74, 77-79; 545 NW2d 4 (1996).

 See Michigan Ed Employees Mut Ins Co v Morris, 460 Mich 180, 200 n 12; 596 NW2d 142 (1999).

 Attard v Citizens Ins Co of America, 237 Mich App 311, 317; 602 NW2d 633 (1999).

 Gobler v Auto-Owners Ins Co, 428 Mich 51, 66; 404 NW2d 199 (1987).

 Adams, 154 Mich App at 190.

 Id.

 Id. at 191.

 Id. at 192-193.

 Id. at 193.

 Id.

 See Holmes v Dep’t of Revenue & Taxation Director, 937 F2d 481, 484 (CA 9, 1991).

 Ross, 269 Mich App at 360.