TINNIN v FARMERS INSURANCE EXCHANGE

Docket No. 286141. Submitted January 5, 2010, at Lansing. Decided February 2, 2010. Approved for publication March 11, 2010, at 9:00.

Minnie Tinnin, as personal representative of the estate of Dolphus Tinnin, deceased, brought an action in the Wayne Circuit Court, John A. Murphy, J., against Farmers Insurance Exchange, seeking benefits under the no-fault motor vehicle insurance act, MCL 500.3101 *et seq.*, for injuries sustained when Dolphus was struck by an automobile while he was crossing the street. Dolphus died two years after the accident. At trial, plaintiff sought to recover, in part, the cost of four office visits related to physical medicine and rehabilitation (PM&R) treatment and $90,000 for attendant care services. The jury determined that plaintiff was entitled to $1,235 for the PM&R bills and awarded plaintiff $218.95 in interest for those overdue benefits. The jury declined to award any benefits for attendant care. The trial court granted plaintiff's motion for no-fault attorney fees and awarded plaintiff $57,690 in attorney fees and $9,651.67 in taxable costs. Defendant appealed the award of attorney fees and costs.

*The Court of Appeals held:*

1. The trial court did not clearly err by determining that defendant acted unreasonably in refusing to reimburse plaintiff for Dolphus's PM&R treatment in the amount of $1,235. Although an insurer may reasonably rely on the medical opinion of its physicians and the independent medical evaluations of those physicians, here defendant simply failed to clarify the results provided in a doctor's independent medical evaluation that defendant relied on to deny plaintiff's claim for PM&R treatment expenses.

2. The trial court did not abuse its discretion by awarding the full amount of attorney fees and costs sought by plaintiff. The trial court did not clearly err by finding that Dolphus's PM&R treatment was sufficiently related to his closed head injury. The trial court did not abuse its discretion by refusing to apportion plaintiff's award of attorney fees to reflect the time spent in pursuit of the successful PM&R claim and the time spent pursuing the unsuc-

cessful attendant care services claim. MCL 500.3148(1) does not unambiguously require such apportionment.

3. The trial court did not abuse its discretion by awarding plaintiff attorney fees. While it is within the discretion of the trial court to adjust the award of attorney fees in light of the results achieved, it is not required to do so as long as the ultimate award remains reasonable.

4. The trial court did not abuse its discretion by awarding plaintiff the costs of procuring the expert testimony presented by plaintiff.

Affirmed.

TRIAL — ATTORNEY FEES — ADJUSTMENT OF AWARDS.

Although it is within a trial court's discretion to adjust an award of attorney fees in light of the result achieved, it is not required to do so as long as the ultimate award remains reasonable.

*Logeman, Iafrate & Pollard, P.C.* (by *James A. Iafrate*), for plaintiff.

*Cory & Associates* (by *Patrick W. Bennett*) for defendant.

Before: BECKERING, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM. Defendant appeals by right the circuit court's judgment awarding plaintiff attorney fees pursuant to MCL 500.3148(1) and taxable costs pursuant to MCR 2.625(A)(1). We affirm. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

Dolphus Tinnin was struck by a car as he crossed a street. At the time, Tinnin was 57 years old and resided with his mother. Tinnin was treated for bone fractures in his right leg and a possible closed head injury. A neuropsychological evaluation found that Tinnin suffered from mild mental retardation and borderline intelligence and that he had suffered a mild closed head

injury in the accident. For approximately $2^1/2$ years after the accident, defendant reimbursed Tinnin for the cost of attendant care services, which were primarily provided by Tinnin's mother, and for other medical expenses. Later, defendant discontinued Tinnin's benefits after obtaining the results of two independent medical evaluations (IME). Defendant denied Tinnin's claims for physical medicine and rehabilitation (PM&R) treatment on the basis of an IME performed by Dr. Nathan Gross, who opined that Tinnin did not require ongoing physical therapy, but that it would have been reasonable for Tinnin to continue to see a PM&R specialist to monitor his condition on an "as needed" basis. At trial, defendant's claims adjuster agreed that the discontinuation of Tinnin's PM&R benefits was improper in light of Dr. Gross's testimony that such treatment would have been reasonable on an "as needed" basis. Defendant denied Tinnin's claims for attendant care services on the basis of an IME performed by Dr. Manfred Greiffenstein, who believed that Tinnin's need for supervision resulted from Tinnin's pre-existing borderline intelligence and not from injuries suffered in the accident.

Tinnin filed suit seven months after the accident,[1] but the case did not go to trial until nearly three years after the accident, evidently because the parties engaged in multiple settlement conferences and facilitation and adjourned the trial date several times. Apparently, defendant did not make a settlement offer.

At trial, plaintiff sought to recover the cost of four office visits with Dr. Ifey Ilechukwu related to PM&R

---

[1] Dolphus Tinnin died just over two years after the accident. Minnie Tinnin, Dolphus Tinnin's mother, was appointed personal representative of his estate. "Plaintiff" hereinafter refers to the personal representative of Dolphus Tinnin's estate.

treatment. Plaintiff also sought more than $90,000 for attendant care services. In support of her claim for attendant care, plaintiff presented the testimony of a psychiatrist and a psychologist, both of whom opined that Dolphus suffered a closed head injury in the accident and that attendant care would be appropriate.

The jury determined that plaintiff was entitled to payment of Dolphus's PM&R bills, and awarded her $1,235. The jury also determined that those benefits were overdue as defined by MCL 500.3142(2), and awarded plaintiff $218.95 in no-fault interest. The jury declined to award plaintiff any benefits for attendant care.

The trial court granted plaintiff's motion for no-fault attorney fees under MCL 500.3148(1), concluding that defendant's failure to pay the PM&R expenses was unreasonable. Plaintiff sought $57,690 in attorney fees, and $9,651.67 in taxable costs. Defendant argued that plaintiff's request for attorney fees was excessive in light of the verdict, and that in excess of $7,000 of the taxable costs plaintiff sought related to her unsuccessful claim for attendant care and should not be granted. The trial court granted plaintiff the full amount of attorney fees and costs requested.

A trial court's award of attorney fees under MCL 500.3148(1) presents a mixed question of law and fact. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Id*. We review questions of law de novo, and review a trial court's findings of fact for clear error. *Id*. "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich

654, 661-662; 641 NW2d 245 (2002). We review a trial court's award of attorney fees and costs for an abuse of discretion. *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.*

The no-fault act, MCL 500.3101 *et seq.*, was intended to provide insured persons who have sustained injuries in automobile accidents with assured, adequate, and prompt compensation for certain economic losses. *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). To ensure prompt payments to the insured, the act includes a provision for attorney fees. *McKelvie v Auto Club Ins Ass'n*, 203 Mich App 331, 335; 512 NW2d 74 (1994). MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

In *Moore*, our Supreme Court explained the statutory prerequisites that must be met before attorney fees may be awarded under MCL 500.3148(1):

> First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). [*Moore*, 482 Mich at 517.]

An insurer's refusal to pay benefits or delay in making payment creates a rebuttable presumption of unreasonableness, and the insurer bears the burden of justifying

the refusal or delay. *McKelvie*, 203 Mich App at 335. "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty," *Ross*, 481 Mich at 11, including bona fide questions whether a particular medical procedure is reasonably necessary. *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97, 104-105; 527 NW2d 524 (1994).

On appeal, defendant argues that it did not act unreasonably by denying plaintiff's entire claim because a bona fide factual dispute existed regarding causation and the amount of benefits owed to plaintiff, if any. We disagree.

"[A]n insurer's initial refusal to pay no-fault benefits can be deemed reasonable even if it is later determined that the insurer was required to pay those benefits." *Moore*, 482 Mich at 526. But, if it is determined that an insurer is not liable for no-fault benefits, they cannot be overdue, and the insurer's initial refusal or delay of payments cannot be deemed unreasonable. *Id*. In the instant case, the trial court found that defendant's denial of benefits was unreasonable only with respect to the $1,235 related to Dolphus's PM&R treatment and did not opine about the reasonableness of defendant's denial of plaintiff's claim for attendant care services. Defendant denied plaintiff reimbursement of the PM&R costs solely on the basis of Dr. Gross's report. While our Supreme Court has held that an insurer may reasonably rely on the medical opinion of its physicians and the IMEs the physicians perform, *id*. at 522, defendant simply failed to clarify the results provided in Dr. Gross's report. Dr. Gross's report did not specifically address whether it was reasonable for Dolphus to continue to obtain PM&R treatment on an "as needed" basis, but Dr. Gross testified in his deposition that he

believed it was reasonable for Dolphus to continue to receive PM&R treatment on an "as needed" basis. The claims adjuster agreed that had she been aware of Dr. Gross's opinion regarding PM&R treatment, she would not have denied plaintiff's PM&R claim. The trial court did not clearly err by determining that defendant acted unreasonably in refusing to reimburse plaintiff for Dolphus's PM&R treatment in the amount of $1,235.

Defendant next argues that the trial court abused its discretion by awarding the full amount of attorney fees and costs plaintiff sought, $57,690 and $9,651.67, respectively. We disagree.

An award of attorney fees under MCL 500.3148(1) must be reasonable. *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982). There is no precise formula for assessing the reasonableness of an attorney fee. *In re Temple Marital Trust*, 278 Mich App 122, 138; 748 NW2d 265 (2008). In *Wood*, our Supreme Court identified the following factors for courts to consider when determining what constitutes a reasonable attorney fee under MCL 500.3148(1): " '(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.' " *Wood*, 413 Mich at 588, quoting *Crawley v Schick*, 48 Mich App 728, 737; 211 NW2d 217 (1973). The factors are not exclusive[2] and a trial court "need not detail its findings as to each specific factor considered." *Wood*, 413 Mich at 588. The burden of proving the fees rests upon the claimant of those fees. *Petterman*

---

[2] See MRPC 1.5(a), which provides eight factors for courts to consider when determining the reasonableness of attorney fees, some overlapping with the *Wood* factors.

*v Haverhill Farms, Inc*, 125 Mich App 30, 33; 335 NW2d 710 (1983). The party seeking attorney fees also bears the burden of establishing they are reasonable. *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 382; 652 NW2d 474 (2002).

Plaintiff sought to recover attorney fees for 192.30 hours of work at a rate of $300 an hour. The 192.30 hours reflected only the amount of time one attorney expended on plaintiff's case over approximately 2½ years, and did not include the time of a second attorney who attended and participated in the trial. Plaintiff submitted an affidavit from her principal attorney stating that the attorney had tried several first-party no-fault cases, five of which resulted in an award of attorney fees. The attorney's hourly rate in those cases ranged from $250 to $300. The trial court granted plaintiff her entire request for attorney fees and costs, explaining its decision as follows:

> In looking at the amount per hour, that appears to be a reasonable hourly rate in light of the court's familiarity with the plaintiff's counsel and experience in the area and the court's familiarity with the Wood criteria we look at in the area of attorney fees.
>
> The hours involved here appear to be reasonably related to the result that occurred and you are entitled to that under the provisions of the act.
>
> PM&R bill we believe is sufficiently relates [sic] to the closed head injury such that the work-up for the case and the witness testimony on the issue would support attorney fees for the whole case. This would include the testimony of the doctors indicating that the–I will say that another way. The testimony of the physicians would be sufficient and apparently was used by the jury in making the call as to whether or not the PM&R bill was related to the accident. It was close enough for them to hang their hat on as a basis for allowing for approval of that bill even though it was not their specific bill, enough of a relationship in terms of the

closed head injury testimony to allow for it and they accepted that testimony as best as we can tell and the totality of the testimony in making the call as to whether or not that bill was reasonably related to the accident.

So all of the testimony went to the issue that the jury found with regard to the support for the bill and for those reasons the entire work-up of the case would be awarded.

The obvious problem with the defendant's suggestion would be that we go back and somehow or another dissect the hours submitted during the course of the trial and the work-up of the trial to determine what was related to the bill, what was unrelated to the bill.

This case, it was all interrelated. This is the case where there was a closed head injury and everything is related. The jury for whatever reason didn't go along with the attended [sic] care. I suspect it was a reason that I had placed on the record but that day she had testified, the mother, that she was doing all these things before the injuries to her son and she was doing the things for him along with preparing meals and so forth for the other son in the home. She was doing it as a mother before the crash but she had to do it as a caregiver after the crash because he couldn't do it for himself.

The jury may very well have used that as a rationale but I am not going to limit the plaintiff or discourage the plaintiff from bringing these kinds of cases and not award the attorney fees because I believe the bill not being paid was unreasonable.

Defendant argues that the bulk of plaintiff's suit revolved around plaintiff's claim for attendant care services totaling over $90,000, which the jury denied completely. Defendant argues that plaintiff's claim for attendant care can be separated from plaintiff's claim for PM&R treatment, and that the award of attorney fees should reflect the amount plaintiff recovered as opposed to how much she sought. Defendant character-izes plaintiff's claim for attendant care benefits as

cognitive in nature and links it to Dolphus's alleged closed head injury, whereas defendant characterizes plaintiff's claim for PM&R benefits as primarily physical in nature, apparently linking it to the leg fractures Dolphus suffered in the accident.

The extent of each injury's relationship to plaintiff's claim for PM&R treatment and attendant care services is unclear from the record. The trial court found the PM&R bill to be sufficiently related to the closed head injury and thus considered unrealistic any attempt to separate the time and costs expended in pursuit of the PM&R claim from the time and costs expended in pursuit of the attendant care services. Defendant fails to provide factual support for its attempt to draw clear lines between plaintiff's claims for PM&R and attendant care. The PM&R bill was based solely on Dr. Ilechukwu's treatment of Dolphus. Dr. Ilechukwu is board-certified in PM&R as well as occupational medicine. He diagnosed Dolphus as having suffered a closed head injury in the accident and believed that his lower back pain was related to the accident. Dr. Ilechukwu testified that the brain trauma Dolphus suffered in the accident exacerbated his preexisting cognitive problems and resulted in a deterioration of both his cognitive and physical functioning. Dr. Ilechukwu recommended that Dolphus receive "case management to coordinate his care," home health care, assistance with his chores and transportation, and eight hours of attendant care a day. Dr. Ilechukwu saw Dolphus three more times over the following year and did not change his diagnoses or recommendations with respect to Dolphus's care. On this record we are unable to say that the trial court clearly erred by finding that Dolphus's PM&R treatment was sufficiently related to his closed head injury.[3]

---

[3] Defendant's apparent reason for attempting to link plaintiff's claim for attendant care exclusively to Dolphus' closed head injury is to argue

Defendant argues that the trial court abused its discretion when it refused to apportion the award of attorney fees so that plaintiff was compensated only for the time and effort directly attributable to securing the overdue PM&R benefits. Defendant, however, points to no authority that requires a court to apportion attorney fees "where a defendant has unreasonably refused to pay certain benefits even where its refusal to pay other benefits was found not to be unreasonable." *Cole v Detroit Auto Inter-Ins Exch*, 137 Mich App 603, 614; 357 NW2d 898 (1984). In *Moore*, the jury awarded the plaintiff $50,000 in noneconomic damages and $42,755 in unpaid work loss benefits. The jury found that only $822.52 of the work loss benefits were overdue and awarded $98.71 in penalty interest accordingly. *Moore*, 482 Mich at 511, 523. The *Moore* Court explained that although an award of attorney fees incurred to collect overdue benefits would normally be appropriate, the plaintiff was not entitled to attorney fees because,

> before plaintiff's suit went to trial, defendant already had paid plaintiff $822.52 for one week of work loss benefits and all other payments that defendant owed as a result of the computer glitch. Because plaintiff did not attribute *any* of the $79,415 that the trial court awarded her in attorney fees and costs to collecting $822.52 in overdue work loss benefits, plaintiff is not entitled to attorney fees. [*Id.* at 524 (emphasis added).]

We find *Moore* distinguishable from the instant case. Unlike in *Moore*, the trial court found that all of the attorney's time for which plaintiff sought compensation was sufficiently related to securing the overdue benefits compensable under MCL 500.3148(1).

that the jury's rejection of plaintiff's attendant care claim equates to a finding that Dolphus did not suffer a closed head injury. At the end of trial, the trial court disagreed with defendant, explaining that the verdict did not compel such an inference. We agree with the trial court.

Because the language of MCL 500.3148(1) does not unambiguously require the apportionment defendant advocates, we hold the trial court did not abuse its discretion by refusing to apportion plaintiff's award of attorney fees.

Defendant's next argument is based on *Wood* factor (3), "the amount in question and the results achieved." Defendant argues that the majority of plaintiff's claim concerned attendant care services totaling over $90,000, which the jury denied completely. Defendant stresses that plaintiff's recovery of $1,453.95, which included penalty interest, constituted less than two percent of the amount of damages plaintiff sought overall. While it is within the discretion of the trial court to adjust the award of attorney fees in light of the result achieved, it is not required to do so as long as the ultimate award remains reasonable. See *Schellenberg v Rochester Lodge No 2225 of the Benevolent & Protective Order of Elks*, 228 Mich App 20, 45; 577 NW2d 163 (1998). In awarding plaintiff attorney fees, the trial court noted its familiarity with plaintiff's counsel and his experience in the area of no-fault insurance, and found that all the attorney hours for which plaintiff sought compensation related to securing the PM&R claim. The trial court explained that the jury apparently used the testimony of each physician to determine that the PM&R costs were related to the accident. And the trial court indirectly addressed plaintiff's small recovery by explaining that he did not want to deter plaintiffs in general from bringing claims for benefits that are unreasonably withheld by their insurers. In light of the trial court's analysis of the *Wood* factors on the record, we conclude that the trial court did not abuse its discretion by awarding plaintiff attorney fees and thus affirm the award.

Defendant also contests the trial court's award of taxable costs to plaintiff. We review a trial court's decision on a motion for costs under MCR 2.625 for an abuse of discretion. *Klinke v Mitsubishi Motors Corp*, 219 Mich App 500, 518; 556 NW2d 528 (1996).

MCR 2.625(A)(1) provides:

> In General. Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.

The trial court awarded plaintiff $9,651.67 in taxable costs, $7,050 of which represented the costs of procuring the expert opinions and testimony of a psychiatrist and a psychologist. Implicit in defendant's challenge to this portion of the costs is again the assumption that Dolphus's closed head injury was the sole basis for plaintiff's claim for attendant care. As discussed above, the trial court did not clearly err when it found that Dolphus's closed head injury sufficiently related to plaintiff's claim for PM&R treatment. Accordingly, the trial court did not abuse its discretion by awarding plaintiff the costs of procuring the expert testimony. See MCR 2.625(B)(2); see also *Angott v Chubb Group of Ins Cos*, 270 Mich App 465, 488-490; 717 NW2d 341 (2006).

We affirm. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219.