*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGANNA RODGERS,

      Plaintiff-Appellee,

v

MICHAEL ALLEN CURTIS,

      Defendant,

and

AUTO OWNERS INSURANCE COMPANY,

      Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 343826
Lenawee Circuit Court
LC No. 15-005400-NF

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

In this first-party action for recovery of personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, defendant, Auto Owners Insurance Company, appeals as of right the trial court's order awarding plaintiff, $195,243 in attorney fees, costs, and paralegal fees under MCL 500.3148(1). Because defendant's denial of plaintiff's claim for PIP benefits was not unreasonable, we vacate the trial court's awards of attorney fees and paralegal fees.

I. FACTUAL BACKGROUND

On June 24, 2014, plaintiff, a pedestrian, was struck by an automobile driven by defendant Michael Allen Curtis while crossing a crosswalk in Clinton, Michigan.[1] Plaintiff's injuries included fractured ribs, a right scapula fracture, and a subdural hematoma in her brain. It is undisputed that plaintiff was diagnosed with dementia before the accident. Accordingly, a contentious issue throughout the case became whether plaintiff's auto-accident brain injury aggravated her preexisting dementia.

After the accident, on August 28, 2014, and September 2, 2014, plaintiff underwent a neuropsychological evaluation by Dr. Denyce Girard Kerner, Ph.D. Dr. Kerner reported that "[w]hen interviewed, [plaintiff] complained of [n]othing." Dr. Kerner further noted:

> She says she was forgetting things before, but it is worse since the accident. She does not really care. Her memory has always been off a little. She remembers to do what she wants to do. She does not do anything that she has to think about. She has trouble remembering names. She has had memory problems for about five years since she was widowed. She has trouble reading, but she always did.

Dr. Kerner noted that he evaluated plaintiff "to assess her neurocognitive and adjustments status secondary to a traumatic brain injury with a subdural hematoma[.]" Dr. Kerner stated that plaintiff "demonstrates dementia due to head trauma and a progressive degenerative dementia."

On December 17, 2014, plaintiff was evaluated by Dr. Rhonda Levy-Larson, who was retained by defendant to perform an independent neuropsychological evaluation. In the social history portion of her January 21, 2015 evaluation report, Dr. Levy-Larson noted that plaintiff reported that she babysat her granddaughter's children, a two-month-old son and a two-year-old daughter, for two hours a day, two days a week, while her granddaughter was at work. Plaintiff stated that after the motor vehicle accident, she did not experience any change in her household chores, she still cooked infrequently, cleaned her own house, and did her own laundry. Plaintiff reported that she was "independent with self-care[,]" and she did not experience a change in her social or recreational activities. Plaintiff was able to schedule her own medical appointments, and then would contact her daughter so her daughter could remind her or take her to the appointments. Plaintiff did not experience a change in the management of her money after the accident; she reported that her daughter had taken care of this "for years" because plaintiff herself was not proficient with numbers. When observing plaintiff's behavior, Dr. Levy-Larson noted that plaintiff, "[d]espite her report of memory problems, . . . had no apparent difficulty providing information about her history, symptoms, problems and treatment[,]" aside from a period of time after the accident and portions of her medical treatment after the accident.

With regard to plaintiff's psychological functioning, Dr. Levy-Larson stated that plaintiff "might have over reported her cognitive problems and symptoms[,]" and, after observing that plaintiff was able to live independently, self-administer multiple medications, drive short

---

[1] Curtis was dismissed from the case by stipulation and is not a party to this appeal. Accordingly, references to defendant hereinafter are references to Auto Owners Insurance Company.

distances, babysit, complete household chores, schedule medical appointments, and participate in social and recreational activities, concluded that this information "supported the diagnosis of a mild, resolved, traumatic brain injury as a result of" the accident. Addressing her diagnostic impressions, Dr. Levy-Larson stated that plaintiff suffered from "[t]raumatic brain injury, mild, resolved, related to the [accident]," and "[d]ementia that predated" the accident and was not related to the accident. During her deposition, Dr. Levy-Larson testified that when she evaluated plaintiff in December 2014, whatever effects plaintiff had suffered from the traumatic brain injury had improved, and plaintiff had "recovered."

On June 22, 2015, defendant, citing Dr. Levy-Larson's recommendations from her evaluation, informed plaintiff that her reimbursement request for attendant care and replacement services as a result of a traumatic brain injury was denied, but that "[a]ll other no-fault benefits are still in place." Leslie Donohue, a PIP claims representative for defendant, offered the following reasoning for denying plaintiff's claim:

> I have been presented with conflicting documents from multiple physicians. I am not a medical expert. I've made my opinion based on Dr. Levy-Larson's opinion and it's not your opinion or your client's opinion, and that's why we're here. I'm not putting any more value on any other physician or not saying any other physician knows more or knows less than any other physician. I have based my opinion on Dr. Levy-Larson's report.

Shortly thereafter, in correspondence to defendant dated July 17, 2015, Dr. Adil Ali, M.D., countered Dr. Levy-Larson's opinion, stating that while plaintiff did have a "mild cognitive impairment" before the accident, the subdural hematoma that plaintiff suffered as a result of the accident caused a "progressive loss of function[.]" In Dr. Ali's words, "[i]t is my opinion within a reasonable degree of medical certainty that [plaintiff's] current functional limitations and cognitive deficits [were] caused by the motor vehicle accident."

On October 12, 2015, Dr. Levy-Larson completed an addendum to her initial neuropsychological evaluation to consider additional records that were not available when she completed her initial evaluation, including Dr. Ali's July 17, 2015 correspondence. The additional information and Dr. Ali's correspondence was presented to Dr. Levy-Larson to determine if it would alter her opinion. Dr. Levy-Larson concluded:

> The additional records reviewed did not substantially change this writer's opinions, conclusions, diagnoses or recommendations. Of interest: per Ms. Rodgers and her daughter's report to this writer, and the information in the records reviewed, at the time of [plaintiff's] evaluation with this writer, her mild traumatic brain injury had resolved, and she was at her baseline with respect to her activities of daily living.

Addressing her diagnostic impressions, Dr. Levy-Larson reiterated that plaintiff's mild traumatic brain injury had resolved, and she further concluded that plaintiff suffered from dementia that predated the motor vehicle accident, and was also "exacerbated" by it. Dr. Levy-Larson clarified that her conclusion in her first addendum—that plaintiff's dementia was exacerbated by the accident—stemmed from Dr. Ali's opinion in his July 17, 2015 correspondence that plaintiff had

experienced "a progressive decline" cognitively since the accident. Dr. Levy-Larson elaborated that the fact plaintiff was experiencing a decline "is not consistent with a traumatic brain injury, so that bolstered [her] opinion that the effects of the traumatic brain injury had resolved." Dr. Levy-Larson also stated that "I cannot state with any certainty that the accident caused a decline in [plaintiff's cognitive] function."

On February 20, 2016, plaintiff was evaluated by Dr. Brian Chodoroff, M.D., at the request of counsel for defendant. While plaintiff denied having any issues with her memory before the accident, she stated that at the time of Dr. Chodoroff's evaluation, "memory problems [were] most bothersome" to her, and she could not remember things later in the day that had taken place earlier in the day. Although plaintiff had not undertaken any "unsafe" activities at home, she posted notes around her home to remind her how to do things. Plaintiff could bathe and dress on her own, but she needed to follow directions posted in her home. Plaintiff had given up driving since the accident, and she could only babysit when another adult was present with her. Plaintiff's daughter described plaintiff's memory problems as "gradually worsening[,]" and because plaintiff would share her personal information with others without using discretion, her daughter had to control plaintiff's access to her own financial information. However, plaintiff's daughter informed Dr. Chodoroff that plaintiff's memory problems first started within "the first week or so" of the accident. Plaintiff could no longer use the stove because she would forget to turn it off. Observing that a review of plaintiff's medical records showed that she began experiencing problems with cognition in 2007, Dr. Chodoroff stated that, on the basis of his clinical evaluation, "[plaintiff] is exhibiting cognitive deficits due to the ongoing effects of a progressive dementia unrelated to the head trauma" arising from the accident.

Dr. Levy-Larson completed a second addendum to her initial report on August 25, 2016, to allow her to review plaintiff's medical records that were not available at the time of her initial examination of plaintiff. In the second addendum, Dr. Levy-Larson stated that the additional records reviewed did not substantially change her opinions, conclusions, diagnoses or recommendations. In particular, Dr. Levy-Larson observed that on the basis of plaintiff's and plaintiff's daughter's reports, as well as a review of the medical records, "[plaintiff's] mild traumatic brain injury had resolved, and [plaintiff] was at her baseline with respect to her activities of daily living." In her diagnostic impressions, Dr. Levy-Larson stated (1) that plaintiff's mild traumatic brain injury related to the accident had resolved, and (2) plaintiff's dementia had preceded the accident, and was "likely exacerbated" by the accident. Dr. Levy-Larson again observed that "[f]rom a neuropsychological viewpoint," nothing suggested that plaintiff could not continue her normal home, social, recreational, and driving activities, and she did not require household assistance, replacement services, or attendant care because of the accident.

On January 8, 2017, Anthony A. Emmer, D.O., prepared a report of his neurological consultation regarding plaintiff. While it does not appear that Dr. Emmer evaluated plaintiff personally, he reviewed her medical records and provided his own neurological opinion of plaintiff's condition. Specifically, Dr. Emmer opined that plaintiff's progressive memory loss "is secondary to an underlying neurodegenerative syndrome, dementia." While Dr. Emmer observed that plaintiff suffered a mild traumatic brain injury following the accident, he noted that "[i]t appears the dysfunction with cognition as a result of traumatic brain injury appears to have

resolved." Dr. Emmer also opined that it was "unlikely" that the mild traumatic brain injury plaintiff suffered as a result of the accident contributed to her current condition.

At trial, plaintiff sought recovery of PIP benefits for unpaid medical bills, mileage, and attendant care expenses in the amount of $38,495.50. The jury returned a verdict in favor of plaintiff, and the trial court awarded plaintiff a judgment of $38,495.50 in allowable expenses, and interest in the amount of $11,165. Plaintiff thereafter filed a motion for attorney fees and costs under MCL 500.3148(1). Plaintiff argued that because Dr. Levy-Larson had concluded that plaintiff's preexisting dementia was exacerbated by the accident, defendant's refusal to pay benefits was unreasonable under § 3148(1). In response, defendant argued that its refusal to pay plaintiff's claim for benefits was reasonable because medical professionals who examined plaintiff had varied medical opinions, and legitimate factual uncertainties existed concerning whether plaintiff's cognitive issues stemmed from, or were aggravated by, the motor vehicle accident. The trial court granted plaintiff's request for attorney fees and then conducted an evidentiary hearing to determine the reasonableness of the requested attorney fees. After the evidentiary hearing, the court awarded plaintiff attorney fees of $167,700, paralegal fees of $15,741.75, and costs of $11,801.25. Defendant now appeals the attorney fee award.

## II. REASONABLENESS OF DEFENDANT'S DENIAL OF PLAINTIFF'S CLAIM

Defendant argues that the trial court erred by finding that it unreasonably denied plaintiff's claim for PIP benefits related to her cogitative issues because (1) a bona fide factual dispute existed regarding whether the accident aggravated plaintiff's preexisting dementia, and (2) defendant reasonably relied on the opinion of Dr. Levy-Larson. We agree.

### A. STANDARD OF REVIEW

The trial court's factual determination regarding whether an insurance company acted reasonably "involves a mixed question of law and fact." *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008), quoting *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008).

> "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." [*Moore*, 482 Mich at 516, quoting *Ross*, 481 Mich at 7.]

We review the trial court's findings of fact to determine whether they are clearly erroneous. *Moore*, 482 Mich at 516. Its decision will be held to be clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*.

### B. APPLICABLE LEGAL STANDARDS

At the time the trial court entered the attorney fee award, MCL 500.3148 provided, in pertinent part:

> (1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in

-5-

addition to the benefits recovered, *if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.* [Emphasis added.[2]]

In *Moore*, our Supreme Court held that § 3148(1) "establishes two prerequisites for the award of attorney fees." *Moore*, 482 Mich at 517. The initial requirement is that the benefits are overdue as contemplated by MCL 500.3142(2),[3] meaning that they were "not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." *Moore*, 482 Mich at 517. With regard to the second requirement, the trial court is obligated to determine, as a factual matter, if the insurer " 'unreasonably refused to pay the claim or unreasonably delayed in making proper payment.' " *Id*., quoting MCL 500.3148(1).

In *Moore*, our Supreme Court noted that an insurer's decision to not pay a claim as requested by the insured is not "unreasonable" as contemplated by MCL 500.3148(1) under the following circumstances:

> [A]n insurer's refusal to pay benefits is not unreasonable [i]f the insurer's refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty. [*Moore*, 482 Mich at 520 (citation and quotation marks omitted).]

In crafting its decision, the Court overruled *Liddell v Detroit Auto Inter-Ins Exch*, 102 Mich App 636; 302 NW2d 260 (1981), in which the defendant insurer, in determining whether the plaintiff was able to resume employment, did not reconcile the opinion of one physician with contradictory medical opinions of the plaintiff's physicians. *Moore*, 482 Mich at 520. Specifically, the Court stated:

> We reject the Court of Appeals analysis of *Liddell*. In *Liddell*, the Court held that a trial court did not clearly err when it found an insurer's conduct unreasonable where the insurer "did not attempt to contact" physicians with conflicting opinions "or in some other way attempt to ascertain the true situation in the face of contradictory reports." *Nothing in the plain language of MCL 500.3148(1), however, requires an insurer to reconcile conflicting medical opinions. Moreover, nothing otherwise implicit in the statute requires an insurer to reconcile competing medical opinions.* Therefore, in accordance with the plain language of MCL 500.3148(1), we overrule *Liddell*. [*Moore*, 482 Mich at 521 (emphasis added).]

---

[2] This statute was amended by 2019 PA 21, effective June 11, 2019. The amendment does not apply to this case.

[3] This statute was also amended by 2019 PA 21, effective June 11, 2019, but, again, the amendment does not impact the analysis of the issue on appeal.

Notably, in *Moore*, the Court rejected this Court's conclusion that, because the defendant insurer in *Moore* was aware that other physicians were treating the plaintiff, the insurance company bore the responsibility of seeking additional information before terminating benefits. *Id*. at 521. The Court explained that "[t]he plain language of MCL 500.3101 *et seq*. does not impose an independent duty on insurers to 'go beyond' the medical opinion of their physicians and the [independent medical evaluations] that those physicians perform." *Moore*, 482 Mich at 522. To put this obligation on an insurer would effectively require the insurer to "shoulder [the] plaintiff's initial burden under MCL 500.3142(2)," which requires a claimant to provide reasonable proof of her claim. *Moore*, 482 Mich at 522. Instead, the pivotal determination is whether the insurer's refusal to pay was unreasonable, and this will require the trial court to undertake a "fact-specific inquiry[.]" *Id*. In *Moore*, the Court stated:

> We conclude that an insurer need not resort to a "tie breaker" to resolve conflicting medical reports, but we note that an insurer acts at its own risk in terminating benefits in the face of conflicting medical reports. . . . Under the plain language of [MCL 500.3142(2)], the claimant shoulders the initial burden to supply reasonable proof of her entire claim, or reasonable proof for some portion thereof. When the claimant provides such evidence, the insurer then must evaluate that evidence as well as evidence supplied by the insurer's doctor before making a reasonable decision regarding whether to provide the benefits sought. [*Moore*, 482 Mich at 522-523.]

Accordingly, under the facts in *Moore*, in which the reports of the physicians were conflicting concerning the cause of the plaintiff's injuries and her ability to return to work, the Court held that the "defendant's decision to discontinue [the] plaintiff's benefits in light of a legitimate factual uncertainty was reasonable." *Id*. at 513, 523.

More recently, in *Slocum v Farm Bureau Gen Ins Co of Mich*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket Nos. 343333, 343409); slip op at 9, this Court explained that, when an insurance company refuses to tender payment of benefits, a rebuttable presumption will arise that requires the insurance company to justify its refusal. The pivotal question is not whether the insurer is ultimately held liable to pay the benefits, but whether the initial decision to not pay benefits was unreasonable. *Id*. See also *Hastings Mut Ins Co v Grange Ins Co of Mich*, 319 Mich App 579, 588; 903 NW2d 400 (2017) (holding that "[a] no-fault insurer may have reasonably delayed or refused to pay a claim even if it is later determined that the insurer is required to pay the benefits").

## C. APPLICATION

We hold that the trial court clearly erred by finding that defendant unreasonably refused to pay plaintiff's claim. The record shows that factual disputes existed among the physicians who evaluated plaintiff concerning whether her cognitive issues after the accident were caused or aggravated by the accident, as well as whether any cognitive issues necessitated the need for household assistance, replacement services, or attendant care.

In her January 21, 2015 report, Dr. Levy-Larson concluded that (1) plaintiff's mild traumatic brain injury following the accident had resolved, (2) plaintiff's dementia predated the

accident and was not related to it, and (3) plaintiff could carry on her normal life activities and that household assistance, replacement services, and attendant care were not necessary. In contrast, in correspondence to defendant, dated July 17, 2015, Dr. Ali expressed his opinion that plaintiff's cognitive decline was related to the injuries she suffered in the accident. Conversely, Dr. Chodoroff and Dr. Emmer opined that plaintiff's cognitive issues were not related to the traumatic brain injury she incurred in the accident. Rather, Dr. Chodoroff believed they were related to her progressive dementia.

The trial court placed great weight on the fact that Dr. Levy-Larson appeared to waver in her opinion concerning whether the accident contributed to plaintiff's preexisting dementia. The court emphasized the fact that Dr. Levy-Larson altered her initial position, and in her first and second addenda to her January 21, 2015 report concluded that plaintiff's preexisting dementia was "exacerbated" by the accident. However, in her first addendum, this conclusion appeared to be based on Dr. Levy-Larson's review of Dr. Ali's July 17, 2015 correspondence, in which he concluded that plaintiff's decline in cognitive function was related to the accident. In her second addendum, Dr. Levy-Larson's conclusion regarding the "likely" exacerbation of plaintiff's dementia by the accident appeared to be founded on her review of the report of Bradley Sewick, Ph.D., a neuropsychologist, in which he stated his impression that plaintiff's traumatic brain injury "might have precipitated a more aggressive dementing process" because of plaintiff's multiple risk factors.

First, we note that Dr. Levy-Larson's equivocation only further added to the factual disputes that pervaded this case. Therefore, to the extent that a "bona fide factual uncertainty" existed concerning whether the accident caused or contributed to plaintiff's cognitive issues, defendant's decision to deny plaintiff's claim for replacement services and attendant care benefits was not unreasonable. *Moore*, 482 Mich at 520, 523; *Bronson Methodist Hosp v Auto-Owners Ins C*o, 295 Mich App 431, 457; 814 NW2d 670 (2012). However, regardless of Dr. Levy-Larson's equivocation over whether the accident exacerbated plaintiff's preexisting dementia, the trial court overlooked the balance of both the first and second addenda, in which Dr. Levy-Larson adhered to her earlier opinion, conclusions and recommendations, and clearly stated that plaintiff "was at her baseline" with her daily life activities, and further stated that there was no evidence to suggest that plaintiff could not maintain her daily life activities, or that she required household assistance, replacement services, attendant care, or cognitive rehabilitation.

Given these conclusions by Dr. Levy-Larson—correct or not—it was not unreasonable for defendant to deny plaintiff's claim for benefits. Regardless of whether plaintiff's preexisting dementia may have been "exacerbated" by the accident, Dr. Levy-Larson was unequivocal in stating that plaintiff was able to maintain her self-sufficiency such that her cognitive issues—whether aggravated by the accident or not—did not require additional services that were covered by no-fault benefits. Because the record clearly reflects that Dr. Levy-Larson, the physician defendant retained to advise it when handling plaintiff's claim, concluded that plaintiff was not in need of household assistance, replacement services, attendant care, or cognitive support, defendant's reliance on her opinion, as well as its decision to decline to pay plaintiff benefits, was not unreasonable and the trial court clearly erred by holding otherwise.

Plaintiff relies on *Tinnin v Farmers Ins Exch*, 287 Mich App 511, 791 NW2d 747 (2010), in support of her argument that it was not reasonable for defendant to rely on Dr. Levy-Larson's evaluation and opinion of plaintiff's condition after Dr. Levy-Larson wavered in her opinion and defendant did not undertake additional efforts to clarify her opinion. In *Tinnin*, the defendant terminated the plaintiff's reimbursement for attendant care services on the basis of an independent medical evaluation performed by a physician whose recommendation was unclear. *Id*. at 513. Specifically, the physician concluded that the plaintiff, who had suffered a closed head injury after being hit by a car, would not require ongoing physical therapy, but that it would be reasonable for the plaintiff to continue consulting with a physical medicine and rehabilitation specialist to monitor his condition as needed. *Id*. at 512-513. After the trial court ruled that the failure to pay benefits was unreasonable, this Court affirmed, concluding that the denial of benefits was unreasonable under circumstances in which the defendant did not clarify the physician's opinion in his report. *Id*. at 516. In *Tinnin*, however, the physician's report was unclear with respect to whether it was reasonable for the plaintiff to continue to receive physical medicine and rehabilitation treatment. *Id*. at 516-517. By contrast, in the instant case, although Dr. Levy-Larson's opinion was equivocal with respect to whether the accident aggravated plaintiff's preexisting dementia, she unequivocally opined that plaintiff's cognitive issues, whether exacerbated by the accident or not, were not disabling to the extent that plaintiff required attendant care, replacement services or cognitive rehabilitation, or related services, which was key to defendant's determination to deny benefits. Accordingly, *Tinnin* is factually distinguishable.

For these reasons, the trial court clearly erred by finding that defendant unreasonably refused to pay plaintiff's claim for PIP benefits related to her cognitive issues. The trial court's award of paralegal fees was also premised on its erroneous conclusion that defendant's denial of benefits was unreasonable under MCL 500.3148(1). Accordingly, we vacate the trial court's order awarding plaintiff attorney fees and paralegal fees under MCL 500.3148(1). Given our disposition of this issue, we need not address defendant's challenge to the reasonableness of the attorney fees awarded, or consider defendant's argument that plaintiff's request for paralegal fees was untimely.

We vacate the trial court's awards of attorney fees and paralegal fees under MCL 500.3148(1).

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra

-9-