# STATE OF MICHIGAN

# COURT OF APPEALS

DE ETTA GARDNER, a/k/a DEETTA
GARDNER,

        Plaintiff-Appellee,

and

THERAPY FIRST, LLC, d/b/a THERAPY 1ST,

        Intervening Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
April 7, 2016

No. 325606
Wayne Circuit Court
LC No. 11-002164-NF

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

This dispute over the award of attorney fees after a jury trial on the payment of first-party no-fault benefits returns to this Court after an earlier appeal on the same issue.[1] Defendant, State Farm Mutual Automobile Insurance Company, again appeals by right the trial court's orders compelling it to pay the attorney fees of plaintiff, De Etta Gardner, and intervening plaintiff, Therapy First, LLC, which does business as Therapy 1st. On appeal, State Farm argues that the trial court erred by ordering it to pay the attorney fees because, in its view, the undisputed evidence established that it reasonably refused to pay the claims by Gardner and Therapy First. It also argues in the alternative that the trial court erred in calculating the fees. On appeal, we conclude that the trial court did not err when it ordered State Farm to pay the attorney fees of Gardner and Therapy First. Accordingly, we affirm.

---

[1] See *Gardner v State Farm Mut Auto Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 17, 2014 (Docket No. 313351).

-1-

# I. BASIC FACTS

On June 5, 2010, Phillip Allred drove his truck into the rear end of a car being driven by Gardner. Although Gardner seemed alright after the accident, Allred conceded that his truck had significant damage.

Karen Winters testified that she is a claim representative with State Farm. In June 2010, State Farm first received a claim for first-party no-fault benefits by Gardner. Winters said State Farm began to receive claims from health providers who treated Gardner in July 2010. However, there was initially an issue as to whether Gardner was an eligible insured person. Gardner was driving her boyfriend's sister's Durango at the time. Winters determined that Gardner was a qualified insured in late August 2010. In early September 2010, she sent Gardner various forms to use for making claims and a form to authorize the release of her medical records. At that time, Winters had not made a determination as to whether Gardner was eligible for benefits, but did list various potential expenses as compensable in State Farm's digital logs. She made those determinations on the basis of Gardner's word alone.

Winters noted that Gardner went to her primary care physician in June 2010, but then switched to a new physician, Aaron Goldfein, M.D., in July 2010. Gardner admitted at trial that she was already scheduled to see Goldfein even before she met with her family physician about her injuries and had already hired a lawyer. She did not treat with her family physician, she stated, because he refused to handle automobile accident cases.

Winters stated that, as a result of her conversations with Gardner and her receipt of some medical records, she "began to question if there was an actual injury that was sustained in this accident." She also believed that the size of the vehicles—Gardner was in a Durango and Allred was in an F-150—made it unlikely that Gardner would suffer an injury. Accordingly, on August 31, 2010, Winters switched the entry for Gardner's claims from compensable to under investigation. She then sent out letters requesting more information. Winters got the medical authorizations in October 2010. She sent out requests for Gardner's medical records in early November 2010, but she did not receive Gardner's records from Goldfein.

Gardner sued State Farm for first-party no-fault benefits in February 2011.

Because Goldfein did not send the requested records, Winters stated, she hired a physician to represent State Farm's interests—what insurers commonly refer to as an "independent" medical examiner or IME—and scheduled Gardner for an examination in April 2011. Neil Friedman, M.D., conducted the examination. Friedman opined in his report that Gardner did not suffer any injury and, even if she had, it would have been a cervical strain that would have healed in 4 to 6 weeks.

Winters testified that, after Friedman sent her his opinion, she decided to approve Gardner's medical claims through July 31, 2010. She indicated that everything after that date, which was the date by which Friedman opined Gardner would have healed if she had in fact suffered a strain, would not be paid. She, however, rejected the claims for replacement services, mileage, and attendant care. She rejected those claims because Friedman stated that Gardner would not have needed those services even if she suffered a cervical strain.

Winters admitted that she received claims from Therapy First for services that it provided to Gardner from June 29, 2010 through August 4, 2011. The total that Therapy First claimed for services was $63,974.21.

The parties tried their dispute before a jury in late February and early March of 2012. After hearing the evidence, the jury returned a verdict in favor of Gardner and Therapy First. The jury found that Gardner sustained "an accidental bodily injury" in the accident, but found that she did not incur any "allowable expenses." The jury, however, found that she did incur some "replacement services expenses" and awarded her $1,720, plus interest. It further found that she incurred some mileage expenses and a medical bill of $400. The jury found that all these expenses became overdue on October 7, 2010. On a separate verdict form, the jury also found that Gardner sustained an injury that resulted in allowable expenses that were provided by Therapy First. It awarded Therapy First $7,500 of its claimed expenses and found that those expenses became overdue on October 7, 2010.

The trial court entered judgment in favor of Gardner in April 2012. It ordered State Farm to pay Gardner $62,167.39, which included over $52,000 in attorney fees. In October 2012, the trial court entered a judgment in favor of Therapy First. It ordered State Farm to pay $57,168.75 to Therapy First, which included over $46,000 in attorney fees.

State Farm appealed in this Court the trial court's decision to award attorney fees to Gardner and Therapy First. On appeal, this Court stated that the trial court did not make specific findings as to whether State Farm's decision to deny payments was unreasonable under MCL 500.3148; rather, it appeared to improperly rely on the fact that the jury found that there were overdue payments.[2] Because this Court did not have a sufficient record to properly review the trial court's decision to award attorney fees under MCL 500.3148, it remanded the case back to the trial court. *Id.* at 6-7.

In July 2014, the trial court held a hearing on remand from this Court. At the hearing, State Farm's lawyer argued that State Farm could reasonably refuse to pay the claims at issue after its independent medical examiner opined that Gardner did not suffer an injury, or, at most suffered a sprain or strain that would have only required a few weeks of therapy. The trial court expressed concern that State Farm refused to pay medical and therapy bills arriving as early as July 2010, even though the independent medical examination did not occur until nearly a year after the accident. The court noted that the emergency room had already diagnosed Gardner with a sprain-strain in June 2010, and it wondered if it was reasonable to deny coverage for Gardner's sprain-strain injury without a medical opinion to contradict the hospital's physician and Gardner's physician.

State Farm's lawyer maintained that the decision to deny was reasonable even at that time; specifically, he cited the evidence that State Farm's adjuster, Winters, had conflicting medical reports, which led her to believe that Gardner might not have suffered an injury:

---

[2] See *Gardner v State Farm Mut Auto Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 17, 2014 (Docket No. 313351), slip op at 6.

"[S]he's smart enough to know and experienced enough to know that when you have conflicting diametrically opposed MRIs, you got an issue here." It was, therefore, in State Farm's lawyer's view, reasonable for its adjuster to hold off approving payment of the bills until the conflicting evidence could be sorted out. Winters attempted to sort the matter out, he stated, by requesting Goldfein's records, which was also reasonable. Goldfein did not provide the records and State Farm could reasonably refrain from taking further action until Gardner sued. After that point, State Farm ordered the independent medical examination, which further justified its refusal.

Gardner's lawyer argued in response that State Farm's decision to deny the claims was unreasonable. He maintained that the initial medical records were not inconsistent and showed that Gardner suffered an injury. Moreover, Winters had every right to obtain Goldfein's records in support of his bill even without an authorization. As such, it was, in his view, unreasonable to sit on the bills for months without taking steps to verify whether there was an actual dispute over whether Gardner suffered an injury and whether the treatments were reasonably necessary to treat that injury. Specifically, he argued that it was unreasonable to deny the claims without first obtaining an independent medical examination, which State Farm only did after Gardner sued. He also argued that State Farm's claim that it could not order an independent medical examination without Goldfein's records was inapposite given that it ultimately ordered the examination without those records.

After hearing the parties' arguments, the trial court discussed the evidence from the trial. It stated that State Farm had records establishing that Gardner had received medical treatment and yet refused to pay the claims; it refused ostensibly because Winters had information that suggested to her that Gardner's claims were not legitimate. Despite Winters' belief that there was evidence that there was a problem with Gardner's claims, the trial court noted, Winters did not request an independent medical examination until almost a year later. In addition, the court found it telling that State Farm elected to pay for physical therapy for the first six weeks on the basis of Friedman's opinion that, if Gardner suffered anything at all, she suffered a neck strain that would have healed in that time. In the court's view, this was potentially an admission that State Farm should have paid the expenses that Gardner incurred during this timeframe. After considering the evidence it found "that the insurer unreasonably refused to pay the claim and unreasonably delayed making proper payments in this particular case."

The trial court went on to state that it was again awarding Gardner her attorney fees and awarding Therapy First its attorney fees. The court specifically related that it had considered all the factors stated in our Supreme Court's decision in *Wood v Det Auto Inter-Ins Exchange*, 413 Mich 573; 321 NW2d 653 (1982), and determined that Gardner's attorney's fees were reasonable. As such, it again ordered State Farm to pay more than $52,000 in attorney fees to Gardner. The trial court similarly reviewed the prior proceedings involving Therapy First's attorney fees and reiterated that it felt the modified fee that it earlier awarded was reasonable.

In September 2014, the trial court entered an order compelling State Farm to pay $46,808.75 in attorney fees to Therapy First. The trial court entered an amended judgment in favor of Therapy First in October 2014. In January 2015, the trial court entered a judgment in favor of Gardner for $62,167.39.

State Farm now appeals again in this Court.

-4-

## II. AUTHORITY TO AWARD ATTORNEY FEES

### A. STANDARDS OF REVIEW

State Farm first argues that the trial court erred when it determined that State Farm's delay or refusal to pay claims was unreasonable within the meaning of MCL 500.3148. Whether an award of attorney fees is warranted under MCL 500.3148 involves a mixed question of fact and law. *Moore v Secura*, 482 Mich 507, 516; 759 NW2d 833 (2008). " 'What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact.' " *Id.*, quoting *Ross v Auto Club Gp*, 481 Mich 1, 7; 748 NW2d 552 (2008). This Court reviews de novo a question of law, but reviews a trial court's findings of fact for clear error. *Moore*, 482 Mich at 516. A trial court's finding is clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. *Id.*

### B. NO-FAULT ATTORNEY FEES

The Legislature has determined that "an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue." MCL 500.3148(1). In addition, the attorney's fee "in an action for personal or property protection insurance benefits which are overdue" "shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." *Id.*

There are two prerequisites to an award of attorney fees under MCL 500.3148(1), the "benefits must be overdue" and the insurer must have " 'unreasonably refused to pay the claim or unreasonably delayed in making proper payment.' " *Moore*, 482 Mich at 517, quoting MCL 500.3148(1). An insurer has the burden to justify its refusal or delay in paying a claim. *Ross*, 481 Mich at 11. "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id.* However, the jury's ultimate decision that the insurer owed benefits to the claimant does not alone establish the unreasonableness of the insurer's initial decision. *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 693; 760 NW2d 574 (2008). Rather, the trial court must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was unreasonable at that time. *Brown v Home-Owners Ins Co*, 298 Mich App 678, 691; 828 NW2d 400 (2012).

On appeal, State Farm makes much of the fact that it had the right to contest a claim without penalty where there is a reasonable dispute about the claim, citing *Clute v Gen Accident Assurance Co of Canada*, 177 Mich App 411, 419-420; 442 NW2d 689 (1989), and that it had no obligation to reconcile conflicting opinions, citing *Moore*, 482 Mich at 521-522. Both propositions of law are correct, but both also depend on the reasonableness of the denial or delay in light of the evidence available to the insurer at the time of its decision. *Brown*, 298 Mich App at 691. As our Supreme Court stated in *Moore*, "an insurer need not resort to a 'tie breaker' to resolve conflicting medical reports, but we note that an insurer acts at its own risk in terminating [or denying] benefits in the face of conflicting medical reports." *Moore*, 482 Mich at 522. Stated another way, although an insurer has no obligation to resort to a "tie-breaker" to resolve a

conflict in the evidence, it does not necessarily follow that the insurer may invariably deny or delay payment when there are conflicting reports. Every case must be judged on its own facts, and it may be unreasonable to deny or delay paying a claim in whole or in part on the sole basis that there appear to be conflicting medical reports.

In this case, the jury found that Gardner suffered an injury in the accident at issue, that the injury caused certain expenses that were compensable under the no-fault act, and that State Farm did not timely pay those claims. Thus, the sole question before the trial court was whether State Farm's decision to deny those claims was reasonable under the facts known to State Farm at the time of its decision. In this case, State Farm's adjuster, Winters, made the decision to deny Gardner's claim for replacement services and mileage, and to deny Therapy First's claims for rehabilitative services.

Winters testified that she decided to list Gardner's status as "under investigation" in August 2010. She did so because she believed that Gardner might not have suffered an injury in the accident. She came to this belief on two primary grounds: she believed that it was unlikely that Gardner would suffer an injury given the size of the vehicles involved and she felt that the medical records that she had received from the emergency room and the scan results from Gardner's treatment with Goldfein conflicted. Because Winters made her initial decision to deny the claims on the basis of this evidence, whether her decision was unreasonable must be determined by examining the evidence available to Winters at that time. *Brown*, 298 Mich App at 691. As such, State Farm's reliance on Friedman's opinion—which he gave months later—is inapposite.

Winters' belief that the vehicles in question were so large that they would have protected their occupants from soft-tissue injuries was unreasonable under the facts. There is no record evidence to support Winters' belief; she merely speculated that that might be the case. And her speculation was directly contradicted by the reports from the hospital and Gardner's treating physician and therapist. An adjuster's speculation is not by itself sufficient to establish a bona fide "factual uncertainty." See *Ross*, 481 Mich at 11, citing *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 66; 404 NW2d 199 (1987). However, Winters' reliance on medical reports might, depending on the circumstances, warrant a denial or delay in paying a claim pending further investigation.

According to State Farm, the emergency room physicians ruled out every potential injury from the accident except a soft-tissue sprain or strain. By contrast, it claims, the studies obtained at Goldfein's request several weeks later ruled-out a soft-tissue injury, but showed disc problems. By her own admission, Winters was not a medical professional and was not qualified to interpret medical tests or reports. As such, whether her decision was reasonable depends on whether a person with her experience and training would conclude that there was a question as to whether Gardner sustained a compensable injury on review of these records.

The reports from Gardner's emergency room visit were consistent with Gardner having suffered a soft-tissue injury in the accident at issue. The physician's notes state that Gardner had "some tenderness to the cervical and upper thoracic spine, primarily on the spinous processes" and that there was "some muscle spasm in the paraspinal regions." The physician diagnosed her with "thoracic strain/sprain type injuries" following a motor vehicle accident. The notes from

her CT scan also mention muscle spasms and note some mild degenerative changes to Gardner's spine. The hospital staff discharged Gardner with instructions to continue her pain-management, continue wearing a c-collar, and to follow-up with a physician for her neck pain.

Although the results from the tests ordered by Goldfein from Basha Diagnostics did not reveal a soft-tissue injury, the professionals who evaluated the tests also did not opine that Gardner did not suffer a soft-tissue injury at the time of her accident; rather, the tests apparently revealed disc problems that were not as clearly seen in the earlier studies from the emergency room. In addition, there is no record evidence to suggest that the tests at issue would have revealed a soft-tissue injury had there been one in the preceding weeks. As such, the reports and test results from Gardner's hospital visit and her subsequent treatment with Goldfein were not on their face contradictory.

As Gardner's lawyer correctly points out in Gardner's brief on appeal, the testimony by Goldfein and Friedman appear to support the conclusion that the reports from Gardner's hospital visit and from Basha diagnostics were not contradictory. We do not, however, need to address that testimony because the doctors offered their opinions long after Winters made her decision. For that reason, she could not have relied on their opinions. The key question is whether a lay person with Winters' experience and training could have examined the reports and reasonably determined that Gardner did not suffer a compensable injury, or that the payment of the claims ought to be delayed pending further investigation.

In evaluating this evidence, the trial court found it noteworthy that Winters did not make any serious effort to investigate the purported contradiction in the evidence. This might, on the surface, suggest that the trial court held State Farm to a higher burden—that it felt that State Farm had a duty to secure the opinion of a tie-breaker, which duty our Supreme Court specifically rejected in *Moore*. See *Moore*, 482 Mich at 522. However, a careful reading of the trial court's decision shows that it did not find that Winters breached some duty to further investigate; rather, it simply found her rationale for initially denying the claims incredible:

> What happens is we have early intervention, as I kind of go through the chronology here. She [Winters] receives this information. *Supposedly this big red flag.* We have originally the coverage issue which is, again, decided pretty quickly after the accident occurs August or September within 2 to 3 months. Yet, there's still no payment. *If she's got these concerns*, there's no request for [Gardner] to go in and check out an IME. There's no request by State Farm to get [Goldfein's] record, which are being sent monthly at this point from Therapy First, as well as Therapy First['s] records I should say. [Goldfein's] bills are being submitted. Therapy First bills are being submitted, yet there is no request for much of anything here. And the only real activity that ultimately occurred was when [Gardner] ultimately intervened and had to file suit in February, then the IME comes back. *And it's in essence one of these justifications for what we've done previously to somewhat cover their tracks for prior denials.* [emphasis added.]

As the trier-of-fact at the hearing, it was for the trial court to determine the weight and credibility to be afforded the evidence. MCR 2.613(C). And the trial court plainly did not believe Winters' assertion that she denied the claims because there was a conflict in the medical evidence. Rather, in the trial court's opinion, her statement was merely a later justification for her denial. Had she truly felt there was a conflict, the trial court explained, she would have made a more serious effort to obtain Goldfein's records or otherwise resolve the conflict. It was in this context that the trial court noted how long it took for Winters to secure an independent medical examination. The trial court did not improperly impose a duty on State Farm to resolve a purported conflict in the medical evidence.

Because the medical reports were not inherently contradictory, the trial court could reasonably find that Winters' stated ground for initially refusing to pay the claims was not worthy of belief.[3] This Court defers to the trial court's superior ability to judge the testimony and evidence. MCR 2.613(C). On this record, we are not left with the definite and firm conviction that the trial court erred when it found that State Farm's decision to deny the claims at issue was unreasonable under the totality of the circumstances. See *Ross*, 481 Mich at 11. Consequently, we affirm the trial court's decision to award attorney fees under MCL 500.3148(1).

## III. AMOUNT OF ATTORNEY FEES

### A. STANDARDS OF REVIEW

On appeal, State Farm argues in the alternative that the trial court erred when it awarded Gardner and Therapy First their attorneys' fees using the method provided under our Supreme Court's decision in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008). Instead, State Farm maintains that the trial court should have applied the multi-factor approach discussed by our Supreme Court in *Wood v Det Auto Inter-Ins Exchange*, 413 Mich 573; 321 NW2d 653 (1982), and that it should have done so at a hearing held for that purpose. More specifically, State Farm believes the trial court should have reduced the fees to reflect the fact that the jury ultimately awarded Gardner and Therapy First considerably less than what they were seeking at trial. This Court reviews a trial court's selection of an amount of attorney fees to award under MCL 500.3148 for an abuse of discretion. *Moore*, 482 Mich at 516, citing *Smith*, 481 Mich at 526 (opinion by TAYLOR, C.J.). This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes. *Moore*, 482 Mich at 516.

---

[3] It is also noteworthy that Winters ultimately approved payment to Therapy First for the treatments it provided to Gardner in the first few weeks after her accident, but refused to pay Gardner her mileage for attending those therapy sessions. See *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 343; 830 NW2d 428 (2012) ("[I]t has long been recognized that the cost of transportation and mileage to and from medical appointments are allowable expenses."). This evidence also supports the trial court's conclusion that State Farm's later actions were attempts to justify its earlier unreasonable decision to deny Gardner no-fault benefits.

## B. ANALYSIS

Although State Farm frames this issue as one involving whether the trial court erroneously applied *Smith* rather than *Wood*, the trial court stated that it applied the factors from *Wood*, and the decisions in *Smith* and *Wood* do not conflict. Indeed, the lead opinion in *Smith* approvingly cited the factors listed by the Court in *Wood*, along with other factors, and stated that it was merely fine-tuning that approach. *Smith*, 481 Mich at 529-530 (opinion by TAYLOR, C.J.). The lead opinion did state that factor 3 from *Wood* should not be applied to the fee shifting-provision established under MCR 2.403(O), because that would be inconsistent with the purpose of the rule. See *Moore*, 481 Mich at 534 n 20 (opinion by TAYLOR, C.J.). But it follows that the lead opinion still felt that factor 3 should be applied in other contexts, and the remaining justices stated that this factor should apply even in that context. See *Smith*, 481 Mich at 543 (opinion by CORRIGAN, J.), and 544 (opinion by CAVANAGH, J.). Therefore, *Wood* still applies and factor 3, which takes into consideration the results achieved, should be considered when determining whether a fee is reasonable. *Wood*, 413 Mich at 588; see also *Univ Rehab*, 279 Mich App at 698-700. It appears then that State Farm's real claim of error is that the trial court abused its discretion by not reducing the fees substantially on the basis of the jury's award as a percentage of the total claims requested. Our Supreme Court has not adopted a categorical rule requiring trial court's to reduce an award of attorney fees on the basis of such a mathematical formula. And this Court has specifically rejected the contention that a trial court must apportion an award of attorney fees on the basis of the jury's award. See *Tinnin v Famers Ins Exch*, 287 Mich App 511, 522; 791 NW2d 747 (2010). Under the decision in *Wood*, the key question is whether the fee was reasonable under the totality of the circumstances. *Id.*

Here, the trial court took the *Wood* factors under consideration and rejected State Farm's contention that the fees should be adjusted downward because the jury awarded Gardner and Therapy First less than the amount they felt was due. With regard to Gardner's lawyer, the trial court specifically noted that he handled the case for "a two year period of time" and through a jury trial; given these circumstances, and "taking into account all of the Wood factors," it concluded that Gardner's lawyer's fee was reasonable. The trial court stated a similar rationale in support of its decision to again award Therapy First its fees. The trial court recognized that there was an issue with fees awarded to an intervening party's lawyers, but it determined that each fee should be assessed on its own merits and the various plaintiffs should not be lumped together and forced to split a fee. For that reason, it assessed the merits of the work performed by Therapy First's lawyers and determined that their fee too was reasonable, as adjusted prior to the remand.

Examining the trial court's actual application of the law to the facts, we conclude that it did not abuse its discretion in reaching either award or in refusing to hold a hearing. The trial court had already examined the factors and reiterated them at the new hearing on remand from this Court. Moreover, State Farm's position was not that the hourly rates were unreasonable or that there was inflated billing; rather, its position was that the trial court should reduce the fees on the basis of the jury's award and because an insurer should not have to pay duplicative attorney fees for intervening plaintiffs. As such, the trial court reasonably determined that it was unnecessary to hold a hearing to further address the amount of the fees. The trial court properly applied the factors from *Wood* to the awards at issue.

Notwithstanding our belief that there is no conflict between our Supreme Court's decisions in *Wood* and *Smith*, and that the trial court properly applied *Wood*, we acknowledge that there is some uncertainty in this area of the law. Our Supreme Court is considering an application for leave to appeal from this Court's decision in *Pirgu v United Services Auto Assoc*, unpublished opinion per curiam of the Court of Appeals, issued December 16, 2014 (Docket No. 314523). The Supreme Court specifically asked the parties to address whether *Smith* or *Wood* governs the proper calculation of fees under MCL 500.3148(1), and whether the trial court abused its discretion in calculating the fee. It has also since held oral argument on the application. See *Pirgu v United Services Auto Assoc*, 498 Mich 860; 865 NW2d 35 (2015). Nevertheless, unless our Supreme Court clearly alters the existing framework for calculating attorney fees, we conclude that the proper method for calculating attorney fees to be awarded under MCL 500.3148(1) is the test stated under *Wood*, as "fine-tuned" in *Smith*, which the trial court properly applied to the facts of this case. Contrary to State Farm's contention on appeal, a trial court does not have an obligation to reduce a fee simply because the jury awarded less than the plaintiff requested at trial. Rather, the relevant inquiry is whether the trial court abused its discretion when—after considering all the relevant factors—it determined that the particular fee awarded was reasonable. In this case, the trial court's awards fell within the range of reasonable and principled outcomes. *Moore*, 482 Mich at 516. Consequently, it did not abuse its discretion as to either award.

## III. CONCLUSION

The trial court did not clearly err when it found that, under the totality of the circumstances, State Farm's initial decision to deny the claims at issue was unreasonable. The trial court also did not err when it applied *Wood* to the calculation of the attorney fees and did not abuse its discretion when it refused to substantially discount the fees on the sole basis that the jury awarded Gardner and Therapy First a fraction of the damages they believed they were owed. Because State Farm's claim that the fees should be reduced did not depend on evidence beyond that already presented to the trial court at trial and in the record, the trial court also did not abuse its discretion when it determined that there was no need for a further hearing on the award of fees.

Affirmed. As the prevailing parties, Gardner and Therapy First may tax their costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro