# STATE OF MICHIGAN

# COURT OF APPEALS

KRISTINA GUTHRIE,

       Plaintiff-Appellee/Cross-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,

       Defendant-Appellant/Cross-
       Appellee.

UNPUBLISHED
July 25, 2017

No. 332199
Macomb Circuit Court
LC No. 2014-003950-NF

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

This matter concerns the imposition of attorney fees and interest under the no-fault act, MCL 500.3101 *et seq*. After conducting a bench trial, the trial court awarded $80,625 in attorney fees and $51,768.93 in interest to plaintiff, Kristina Guthrie. In its appeal, defendant, Auto-Owners Insurance Company, contends that no attorney fees or interest could be imposed under the applicable statues, MCL 500.3142 and MCL 500.3148. In a cross-appeal, Guthrie argues that she was entitled to additional fees and interest. We affirm the trial court's decision to award attorney fees and penalty interest, but remand for the calculation and imposition of additional fees related to the time spent by Guthrie's lawyer conducting the trial held in this matter.

## I. BASIC FACTS

In 1996, when Guthrie was 14 years old she was severely injured in an automobile accident. There is no dispute that she requires housing accommodations and that Auto-Owners is liable to pay benefits due to Guthrie arising from her injuries.

After the accident, Guthrie lived in a home that Auto-Owners paid to have modified to suit her needs. However, the home was lost to foreclosure in 2010, and Guthrie and her mother moved to a mobile home that cannot be modified to suit Guthrie's needs. At least throughout 2012 and 2013, Guthrie and Auto-Owners worked together with the goal of purchasing a home that, if not already suited for Guthrie's needs, could be modified, at Auto-Owners' expense. The parties came close to purchasing at least two homes, but ultimately, were unable to complete either sale. Then, in July 2013, Auto-Owners sent a letter to Guthrie explaining that due to Auto-Owners' interpretation of a then-recent decision of our Supreme Court, *Admire v Auto-Owners Ins Co*, 494 Mich 10; 831 NW2d 849 (2013), Auto-Owners no longer believed it was responsible

-1-

for purchasing a home for Guthrie. Rather, Auto-Owners believed that its duty was to modify a home owned or rented by Guthrie. Auto-Owners explained that while it would no longer consider purchasing a home for Guthrie, it would "consider the cost of the modification of Ms. Guthrie's current home or another home that Ms. Guthrie elects to rent or purchase."

In January, 2014, Guthrie purchased a home located on L'Anse Creuse Street in Harrison Township for $54,000. An occupational therapist, originally hired by Auto-Owners, evaluated the home and made recommendations regarding what renovations would be required to suit Guthrie's needs, and Guthrie hired an architect to design plans for these renovations. After the architect created the plans, Guthrie received an estimate from a contractor, Bath For All (BFA), of $289,000. Guthrie was provided a document titled "Estimate," which detailed the costs of various aspects of the project. The document contained signature lines. Guthrie signed the document on August 19, 2014, and a representative for BFA signed it on September 12, 2014. The document was submitted to Auto-Owners as proof of a covered loss. Auto-Owners, however, did not pay.

Thereafter, Guthrie filed suit, alleging that Auto-Owners had unreasonably refused to pay benefits under the no-fault act. Guthrie sought payment of the benefits, attorney fees, and interest under the no-fault act. While the matter was pending, a second renovation plan, one that involved building a new home rather than renovating the existing home on the L'Anse Creuse property was provided to Auto-Owners. The cost of this plan was $286,819.17. Shortly after receiving this estimate, the parties agreed to settle the matter—at least in terms of what benefits were due to Guthrie—with Auto-Owners paying Guthrie $289,349.17. The parties did not, however, agree to settle the question of Guthrie's entitlement to attorney fees and interest. After a bench trial on those issues, the trial court awarded Guthrie $80,625 in attorney fees and $51,768.93 in interest.

## II. AUTO-OWNERS' CLAIM

### A. STANDARD OF REVIEW

Auto-Owners' main contention is that the trial court erred when it concluded that Guthrie had incurred an expense when she and BFA signed the estimate. Auto-Owners also contends that the trial court erred by awarding attorney fees and interest. "This Court reviews a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). The right to attorney fees under the no-fault act is statutory, see MCL 500.3148, as is the right to penalty interest, see MCL 500.3142. "Issues of statutory interpretation are reviewed de novo." *Ross v Auto Club Grp*, 481 Mich 1, 6; 748 NW2d 552 (2008). With regard to attorney fees under the no-fault act, our Supreme Court has explained:

> The no-fault act provides for attorney fees when an insurance carrier unreasonably withholds benefits. The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact.

Whereas questions of law are reviewed de novo, a trial court's findings of fact are reviewed for clear error. A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. [*Id*. at 7 (quotation marks omitted).]

"Whether a contract exists is a question of law that this Court reviews de novo." *AFT Mich v Michigan*, 303 Mich App 651, 659; 846 NW2d 583 (2014).

## B. ANALYSIS

Under the no-fault act, an insurer may become obligated to pay attorney fees pursuant to MCL 500.3148(1). In addition, insurance companies that fail to timely pay benefits are required to pay interest pursuant to MCL 500.3142. Under both MCL 500.3148 and MCL 500.3142, the claimant must be entitled to the claimed benefits before receiving either attorney fees or penalty interest. MCL 500.3107(1)(a) provides that personal protection insurance (PIP) benefits are payable for "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." "In order for a no-fault insurer to be responsible for a particular expense, three requirements must be satisfied: (1) the expense must have been incurred by the insured, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable." *Hamilton v AAA Mich*, 248 Mich App 535, 543; 639 NW2d 837 (2001).

Auto-Owners asserts that Guthrie did not incur any expense for the renovation of the L'Anse Creuse home. In *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476; 673 NW2d 739 (2003), our Supreme Court explained that " 'incur' means 'to become liable or subject to, especially because of one's own actions.' " *Id*. at 484, quoting *Webster's II New College Dictionary* (2001) (brackets omitted). The Court explained, "An insured could be liable for costs by various means, including paying for costs out of pocket or signing a contract for products or services." *Id*. at 484 n 4.

"A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016) (citation and quotation marks omitted). The fourth element is the only element at issue in this case. "Mutuality of agreement" refers to a meeting of the minds on all material terms of a contract. *Sanchez v Eagle Alloy Inc*, 254 Mich App 651, 665; 658 NW2d 510 (2003). In this regard, a contract is formed when an offer is accepted. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452-454; 733 NW2d 766 (2006). "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id*. at 453 (citation and quotation marks omitted). "An acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Id*. at 453-454 (citation, quotation marks, and brackets omitted). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their

visible acts, not their subjective states of mind." *Id*. at 454 (quotation marks and citation omitted).

The trial court found these considerations satisfied by the estimate provided to Guthrie by BFA. Although simply titled "Estimate," the document details all major aspects of the project to modify the home and the cost to do so. The document indicates that the total price stated, $289,000, is "[v]alid for 30 days." The document also contained two signature lines, the first for the offeree, Guthrie, and the second for the offeror, BFA. Guthrie signed the document on August 19, 2014, while a representative for BFA signed the document on September 12, 2014. The document demonstrates BFA's intent to extend an offer to perform the construction project. BFA also expressed the price of its services. The phrase, "valid for 30 days," clearly indicates the existence of an offer that could be accepted by the offeree. In turn, Guthrie's signature, which was affixed to the bottom of the document, indicated her unequivocal acceptance of the terms of the agreement. Accordingly, the document was an executed contract, obligating BFA to renovate the home, and obligating Guthrie to pay for the renovations. Therefore, the expense was incurred within the meaning of MCL 500.3107(1)(a).

Auto-Owners explains that BFA "did not purchase materials, obtain permits, retain any subcontractors, pound a nail, tear down the uninhabitable building, or take any steps consistent with a building contract." Although accurate, those facts are irrelevant in this case because that only shows that the contract was not ultimately performed, not that no contract existed in the first instance. Auto-Owners also contends that the document was an estimate and nothing more. But if this were true, there was no purpose in having Guthrie and BFA sign it. The fact that the document invited Guthrie to affix her signature to it clearly indicates that it was intended to be an offer, and her signature demonstrates her acceptance. Auto-Owners' contention that the document was a "sham" used only to "seek a settlement" is simply Auto-Owners' interpretation of events; there is no basis in evidence for these claims. Auto-Owners also notes that while the document stated it was valid for 30 days, Guthrie signed it more than 30 days after the document was created. This is also irrelevant. BFA, by signing the document, demonstrated its approval of the belated acceptance of its offer.[1] Auto-Owners next argues that the estimate was not a bill to be paid, and that Auto-Owners could not be expected to pay $289,000 up front to Guthrie. Auto-Owners explains that a $50,000 deposit would have been required before work began.[2] Thus, according to Auto-Owners, if Guthrie had truly reached an agreement with BFA, Auto-Owners should have been given a bill for $50,000. However, "[s]hould the insured present a contract for products or services rather than a paid bill, the insurance company may, in order to protect itself, make its check payable to the insured and the contractor." *Proudfoot*, 469 Mich at

---

[1] Auto-Owners compares the document to another, virtually identical document, prepared by BFA for Guthrie, in conjunction with a potential project at a different address in 2013. The 2013 document was not admitted as evidence at trial. Thus, Auto-Owners' argument is an inappropriate attempt to expand the record on appeal. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002).

[2] BFA's owner testified that he would have required a $50,000 down payment on a project of this magnitude.

484 n 4. Similarly here, when presented with the signed contract for the full amount of the renovations, Auto-Owners could have protected itself by working with BFA to establish a payment schedule and method of payment. The fact that Auto-Owners chose not to do so does not mean that Guthrie did not incur an obligation. Furthermore, Auto-Owners argues that Guthrie never incurred the architect's expense of approximately $896 because neither Guthrie nor her mother received a bill for this amount because the architect sent the bill directly to Auto-Owners. However, the mere fact that the bill was not sent to Guthrie does not negate her obligation to pay the architect.

Auto-Owners also suggests that it should not have to pay attorney fees and interests because the expense of the renovation was not reasonable. "[T]he question whether expenses are reasonable and reasonably necessary is generally one of fact . . . ." *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55; 457 NW2d 637 (1990). At trial, Auto-Owners' representative, Michael Maher, agreed that due to Guthrie's injuries, she required modifications to her home. Maher also testified that the proposed modifications were ultimately derived from recommendations from an occupational therapist. Maher agreed that these recommendations were reasonable, and that he had no opinion from anyone else indicating otherwise. Further, Auto-Owners never presented any evidence showing that the price quoted by BFA for performing these renovations was unreasonable. Therefore, the record supports the trial court's finding that the expenses were reasonable and reasonably necessary.

Nevertheless, Auto-Owners argues that the renovation plan could not be implemented because the home had not been inspected and approved for occupancy. Although the home had not passed inspections and an occupancy permit was not issued, it is likely that these problems would be cured once the renovations were complete. It was the implementation of the plan itself that would lead to Guthrie's occupancy of the home, not vice-versa. In addition, Auto-Owners asserts that it was legally impossible to perform any work at the home. However, while it is true that the home could not be occupied in its current state, there is no evidence indicating that Guthrie would be legally prohibited from renovating the property. As the trial court explained, Auto-Owners' belief that the home could not be modified or become habitable was "unfounded and unsupported by any other professional." Rather, and as the trial court recognized, Guthrie's "architect and builder indicated that the structure could be modified and habitable and suitable for [her] needs . . . ." Auto-Owners fails to demonstrate that this finding is clearly erroneous.[3]

---

[3] In a somewhat related argument, Auto-Owners contends that Guthrie failed to mitigate damages. Auto-Owners fails, however, to cite any authority from which the argument derives. "An appellant may not state a position without citing authority and expect this Court to search for grounds to support the claim." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 56; 698 NW2d 900 (2005). Nor does Auto-Owners' position have any evidentiary support. Auto-Owners believes that Guthrie purchased the L'Anse Creuse home, knowing it would have to be torn down, in an effort to force Auto-Owners to build her a new home at considerable expense. There is, however, no evidentiary support for this theory. Rather, as the trial court found, Auto-Owners essentially left Guthrie to her own devices and instructed her to purchase or rent a house. Guthrie did so "with the resources available to her. . . . [S]he

The trial court also did not err in concluding that Guthrie is entitled to penalty interest and attorney fees. "Penalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits." *Williams v AAA Mich*, 250 Mich App 249, 265; 646 NW2d 476 (2002). "No-fault penalty interest is intended to penalize an insurer that is dilatory in paying a claim." *Id*. For the reasons discussed, Guthrie indeed incurred a reasonably necessary expense, which Auto-Owners refused to pay. Thus, the trial court properly awarded penalty interest under MCL 500.3142.

The right to attorney fees similarly exists where an insurer fails to pay benefits that are overdue. MCL 500.3148(1). Attorney fees are only permitted under the no-fault act where an insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). As our Supreme Court has explained:

> The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured. Accordingly, an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay. The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty. [*Ross*, 481 Mich at 11.]

"The determinative factor in [the] inquiry is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Id*.

With regard to attorney fees, Auto-Owners contends that its refusal to pay benefits was reasonable. The trial court concluded otherwise, and we find no error in this determination. The evidence admitted at trial established that after Auto-Owners received the BFA estimate, Auto-Owners reported to the Michigan Catastrophic Claims Association (MCCA) that it was procuring other estimates for the renovation project before deciding whether to pay the claim. However, Maher admitted that this was untrue. While Auto-Owners had retained an expert to review the plans, that expert was never asked to provide an opinion. Furthermore, at trial, Maher confirmed that from the time Guthrie provided Auto-Owners with the signed document from BFA until the matter eventually reached partial settlement, Auto-Owners did nothing to consider whether to pay for the modifications. This testimony supports the trial court's finding that Auto-Owners' refusal to pay the claim was unreasonable. It is essentially an admission that Auto-Owners decided to await litigation rather than investigate the claim. Therefore, this cannot be considered a reasonable denial of benefits.

Auto-Owners argues that it was "absolutely reasonable for [it] to determine that it did not have reasonable proof of [Guthrie's] alleged incurred expense" because it "never received a bill from BFA, but rather received a document labeled 'Estimate.'" There is no evidence that such a determination was actually made by Auto-Owners. Rather, the evidence seems to indicate the opposite; at trial, Maher acknowledged that Auto-Owners never sent any correspondence to

bought what she could afford and signed a contract for the purchase." Auto-Owners fails to demonstrate that this factual finding is clearly erroneous.

Guthrie indicating that her claim for renovation expenses was denied because she did not incur the expense. Consequently, the trial court did not clearly err when it concluded that Auto-Owners' conduct was not reasonable.

Finally, Auto-Owners contends that even if attorney fees and interest are warranted, damages should be calculated based on the amount BFA would have required as a deposit, $50,000, not the entire $289,000 price of the estimate. Auto-Owners reasons that the only expense that would have been incurred by plaintiff is this deposit, at least until the project was completed. However, Guthrie incurred the entire expense of the project by signing an agreement to that effect. Accordingly, Auto-Owners fails to demonstrate error requiring reversal.

### III. GUTHRIE'S CROSS-APPEAL

In her cross-appeal, Guthrie asserts that she was entitled to additional attorney and interest. We agree that plaintiff was entitled to additional attorney fees for the time her lawyer spent at trial. In all other respects, we find no errors warranting relief.

With regard to the award of attorney fees, it is undisputed that the action filed by Guthrie sought PIP benefits "which are overdue." MCL 500.3148(1). This action was not finally resolved until the bench trial was concluded. As such, the time Guthrie's lawyer spent at trial is a compensable expense under MCL 500.3148(1). See *Bloemsma v Auto Club Ins Ass'n (After Remand)*, 190 Mich App 686, 689-691; 476 NW2d 487 (1991) (concluding that under MCL 500.3148(1), attorney fees were available to a plaintiff "for the services rendered on this matter up to and including trial[,]" as well as on appeal).

Nevertheless, Auto-Owners argues that no attorney fees incurred after either November 24, 2015, the date the settlement agreement was executed, or November 30, 2015, the date the order of partial dismissal was entered, are recoverable. Auto-Owners posits that once either of these events occurred, the action was no longer one for overdue PIP benefits. While the settlement took away the dispute over the amount of benefits due to Guthrie, it did not resolve the entire case. By its express terms, the settlement did not resolve the question whether Guthrie was entitled to attorney fees or penalty interest. The key dispute with regard to whether attorney fees would be imposed was whether Auto-Owners had unreasonably delayed paying benefits that were overdue. The case retained the essential character of the type of disputes at issue in MCL 500.3148(1), i.e., a dispute over whether an insurer unreasonably refused or delayed paying benefits that were due. Pursuant to MCL 500.3148(1), Guthrie is entitled to reasonable attorney fees incurred in the entire action, and the trial court erred by not awarding attorney fees for the time Guthrie's lawyer spent during trial.

Next, the trial court found that the date the agreement with BFA was fully executed was the date the expense was incurred, and thus, the date attorney fees became recoverable. Guthrie now argues that Auto-Owners' unreasonable conduct began much earlier, and involved Auto-Owners' actions related to other home sales that were not completed in 2012 and 2013. Guthrie, therefore, asserts that it would be appropriate to award attorney fees incurred on or after June 25, 2013, the day after an earlier lawsuit between the parties settled. We, however, conclude that due to the conduct of Guthrie's lawyer at trial, she cannot now claim the error raised on appeal. Until the present appeal, Guthrie never suggested that it would be appropriate to include all fees

incurred on or after June 25, 2013. Instead, Guthrie's lawyer first requested fees of over $117,000, which included fees going back to 2011, and, then as an alternative, offered a second calculation for $80,625 at the conclusion of trial, which included only those fees incurred on or after September 12, 2014. "It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). Here, Guthrie's lawyer provided the trial court with two options. He advocated for the first, and in the alternative, requested the second. Any error in failing to consider a third option, one never suggested to the court, falls on Guthrie's lawyer. As Guthrie's lawyer caused the alleged error, Guthrie cannot now seek relief stemming from that purported error in this Court.[4]

Finally, Guthrie contends that she was entitled to additional interest under MCL 500.3142. She asserts that interest should have been calculated using a start date of May 9, 2012, or alternatively, May 31, 2013. At trial, Guthrie's lawyer provided the trial court with three interest calculations. One calculation began on May 9, 2012, and was for approximately $128,000. Another began on May 31, 2013, and was for approximately $105,000. The calculation accepted by the trial court began on September 12, 2014, and was for $51,768.93. In his closing argument, with regard to these calculations, Guthrie's lawyer explained:

> And, your Honor, I'm going to submit to the Court, I'm not trying to tell you you should award [$]105[,000] or $128,000.00 in interest. I'm not here to tell you that. In this closing I'm telling you the safest thing[] for the Court to do is to go with the unquestionable absolute date of September 12, 2014 for interest, $51,000 and change.

Guthrie's lawyer then explained that the purpose of including these alternative calculations was to demonstrate that Auto-Owners had saved a substantial sum "by not paying, by delaying, by dragging their feet, by doing nothing . . . ." As a result, Guthrie's "position on appeal is untenable because it is contrary to the position [s]he took in the lower court. A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Kloian*, 273 Mich App at 455 n 1 (citation and quotation marks omitted).[5]

---

[4] Guthrie's argument also lacks merit. Guthrie's basis for seeking fees predating her agreement with BFA is that Auto-Owners acted unreasonably with regard to the failed attempts to purchase other homes in 2012 and 2013. But no contract was ever signed by Guthrie obligating her to purchase these other homes. Thus, she never incurred an expense related to those homes. See *Proudfoot*, 469 Mich at 484 n 4. It would be error to allow Guthrie to recover attorney fees related to an expense that was never incurred. See *id*. at 484-485.

[5] In its response to Guthrie's cross-appeal, Auto-Owners contends that the trial court's award of attorney fees and interest should be reduced for various reasons. We find Auto-Owners' attempt to raise these arguments only in response to the cross-appeal improper. Auto-Owners raises the issues only in its posture as an appellee. An appellee, however, is not permitted to raise issues

The trial court's judgment is affirmed. However, we remand for the trial court to determine the proper amount of attorney fees to be awarded to Guthrie for the time her lawyer spend conducting the trial in this case. We do not retain jurisdiction. Because neither party prevailed in full we award no costs under MCR 7.219(A).

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

not appealed by the appellant. *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 351; 725 NW2d 684 (2006). Nor may an appellee obtain relief more favorable than that granted by the trial court absent filing its own appeal. *Id*. If Auto-Owners wished to argue for a reduction of the trial court's award, it should have raised the issues in its own appeal, not in response to the cross-appeal. See *id*. Accordingly, we decline to consider defendant's arguments requesting that this Court reduce the amount of the trial court's attorney fee and interest award.