*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BEAUMONT HEALTH,

        Plaintiff-Appellant,

v

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendant-Appellee,

and

UNNAMED ASSIGNEE OF THE MAIPF,

        Defendant.

FOR PUBLICATION
June 22, 2023
9:05 a.m.

No. 361109
Wayne Circuit Court
LC No. 21-005626-NF

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

In this case brought under the no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals by right the trial court's order granting in part and denying in part its motion for partial summary disposition[1] brought against the Michigan Automobile Insurance Placement Facility (MAIPF).[2] On appeal, plaintiff argues that the trial court erred when it denied in part its motion for partial summary disposition regarding plaintiff's request for statutory interest and attorney fees because the MAIPF had not met its burden of showing it reasonably disputed plaintiff's claim for personal

---

[1] Although plaintiff presented its motion as one for partial summary disposition, the trial court's order deciding the motion was the final order in this case and disposed of all of the claims between the parties.

[2] As will be discussed, the MAIPF eventually assigned an insurer in this case, but the insurer never participated in this case in the trial court or on appeal.

protection insurance ("PIP") benefits during a period in which the MAIPF delayed paying benefits. We reverse in part and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this case, plaintiff provided emergency and inpatient medical care to Ruby Patrick ("Patrick"), who was seriously injured in a traffic accident. Patrick was a passenger in a vehicle that crashed into a tree and caught fire. Patrick was taken by ambulance to plaintiff's Royal Oak Beaumont Hospital and remained in inpatient care for six days. Plaintiff billed $70,504.04 for the services it provided to Patrick. The driver of the vehicle in which Patrick was injured did not own the vehicle, which was insured by Progressive Insurance Company. According to plaintiff, Progressive denied plaintiff's PIP benefits claim with Progressive because there was no familial relationship between its named insured and Patrick. On April 6, 2021, plaintiff, through its attorney, filed an application with the MAIPF for PIP benefits to be reimbursed for the services it provided to Patrick. Plaintiff made clear in its application that the information that plaintiff had did not extend far beyond the police report from the accident and Patrick's medical records from her care provided by plaintiff, and those documents were attached to plaintiff's application. Many of plaintiff's answers to the application's questions referred the MAIPF to the attached documents and stated that plaintiff's knowledge was limited to the information in the documents, without providing substantive answers to the questions within the application itself.

On May 5, 2021, plaintiff filed a two-count complaint seeking declaratory or injunctive relief requiring the MAIPF to assign an insurer to plaintiff's claim and the unnamed insurer to pay the claim. On May 12, 2021, the MAIPF sent an e-mail to plaintiff's attorney stating that the MAIPF could not process plaintiff's claim until Patrick provided certain information. Patrick refused to cooperate with the parties, and did not appear for her scheduled deposition. On September 2, 2021, the MAIPF moved the trial court to enter an order for Patrick to show cause why she did not appear for her deposition. The MAIPF argued in its show-cause motion that the MAIPF was statutorily prohibited from granting benefits until Patrick personally submitted a completed application for benefits. On September 17, 2021, plaintiff moved for partial summary disposition on the issue whether it could claim benefits without Patrick's cooperation, arguing that, as a healthcare provider, it was a proper claimant under the no-fault act and it had already met its burden of establishing eligibility for payment on its claim.

On November 8, 2021, the MAIPF notified plaintiff that it was assigning plaintiff's claim to an insurer. The next day, plaintiff moved for leave to amend its complaint to add allegations that plaintiff's claim can proceed without Patrick personally filing an application for benefits and that plaintiff was entitled to statutory interest and attorney fees for the period in which the MAIPF refused to pay plaintiff's claim. The MAIPF opposed plaintiff's motion to amend its complaint on the basis that all of those allegations had been made in plaintiff's original complaint. Defense counsel also stated in the MAIPF's response that he had been incorrect that the MAIPF requires Patrick to submit her own application in order for plaintiff's claim to be paid, and plaintiff's application in this case was not approved because the application was incomplete.

At a hearing on plaintiff's motion, plaintiff argued that it was pursuing the issue of penalty interest and attorney fees in this case because, at that time, there was no binding precedent establishing that healthcare providers were proper claimants of PIP benefits and that an application

for benefits from the MAIPF could be considered complete under the statute when a claimant was unable to provide all the information requested by the application. The MAIPF conceded that a healthcare provider may file a PIP benefits application directly with the MAIPF, but maintained that a healthcare provider is not technically a claimant, but a person bringing a claim on behalf of the injured person. The MAIPF would not make any stipulations regarding when an application is considered "completed," and contended that the issue would have to be litigated because the MAIPF maintained that plaintiff's application was incomplete. The parties and trial court agreed that plaintiff should amend its complaint to better frame the issues regarding whether a healthcare provider is a proper claimant of PIP benefits, rather than merely being entitled to bring a claim on behalf of an injured person, and how to determine whether an application is complete. Plaintiff filed its amended complaint and also amended its motion for partial summary disposition to make more detailed arguments regarding the issues. Plaintiff's claim was paid on December 2, 2021, by the assigned insurer.

On March 30, 2022, the trial court held a hearing on plaintiff's motion for partial summary disposition. The parties and court discussed that, although there is no dispute that a healthcare provider can submit a claim to the MAIPF, this Court has never held that a healthcare provider is a "claimant." Plaintiff asked the trial court to hold that a healthcare provider is a claimant and argued that, until that holding was made, the MAIPF would always have the option of arguing that a healthcare provider lacks standing to bring a claim and to delay or deny payment on that basis. The trial court considered the parties arguments and concluded that healthcare providers can be proper claimants.

The trial court and parties then turned to the issue regarding how to determine whether an application is "completed," which triggers the MAIPF's obligation to determine whether a party is entitled to benefits. The trial court ruled that a claimant must reasonably comply with the requirements for completing an application and that a healthcare provider is under no obligation to continue to investigate the additional information required in the application once it is established that the injured party is unavailable or uncooperative. The trial court concluded that plaintiff had met its burden of completing its application in this case. However, the trial court denied plaintiff's request for penalty interest and attorney fees. The trial court reasoned, with little elaboration, that the legal uncertainty regarding the completeness of plaintiff's application prevented the court from concluding that the MAIPF did not reasonably dispute plaintiff's claim. On April 4, 2022, the trial court entered an order granting in part plaintiff's motion for partial summary disposition in favor of plaintiff on the issues that plaintiff was a claimant and had submitted a completed application, and denying plaintiff's motion regarding interest and attorney fees.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion brought under MCR 2.116(C)(10) is properly granted when there are no disputed material facts and, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *Id*. at 160. Whether an insurer acted reasonably when it delayed paying a claim presents a mixed question of law and fact. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). "What constitutes reasonableness is a question of law, but

whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Id*. "This Court reviews de novo questions of law, but we review findings of fact for clear error. A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008) (quotation marks and citation omitted). Issues of statutory interpretation are reviewed de novo. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012). The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *Id*. "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011).

## III. DISCUSSION

Plaintiff argues that the trial court erred when it denied in part plaintiff's motion for summary disposition on plaintiff's claim for penalty interest and attorney fees. We agree.

After the Legislature amended the no-fault act in 2019,[3] the insurer of the owner or operator of an automobile involved in the accident is no longer required to pay PIP benefits to a passenger of the vehicle. *Bauer-Rowley v Humphreys*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358846); slip op at 5. There are three levels of priority for insurers of passengers, which are, respectively: (1) the passenger's no-fault insurer, (2) the insurer of the passenger's spouse or a resident relative, and (3) the MAIPF. *Id*. at 5-6. There are four scenarios under which the MAIPF is responsible for providing PIP benefits. MCL 500.3172 provides, in pertinent part:

> (1) A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may claim personal protection insurance benefits through the assigned claims plan if any of the following apply:

> (a) No personal protection insurance is applicable to the injury.

> (b) No personal protection insurance applicable to the injury can be identified.

> (c) No personal protection insurance applicable to the injury can be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss.

> (d) The only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed.

When a claimant believes that the MAIPF is the appropriate insurer to pay benefits, the claimant "shall file a completed application on a claim form provided by the Michigan automobile insurance

---

[3] MCL 500.3114, as amended by 2019 PA 21.

placement facility and provide reasonable proof of loss . . . ." MCL 500.3172(3). After a claim has been filed with the MAIPF, the MAIPF must make an initial determination whether the claimant is eligible for benefits because one of the provisions of MCL 500.3172(1)(a) through (d) apply to the claim, and the MAIPF must deny the claim if it determines the claimant is ineligible for benefits. MCL 500.3173a(1). After receiving an application, the MAIPF, or an insurer to which the MAIPF has assigned the claim, "shall specify in writing the materials that constitute a reasonable proof of loss within 60 days after receipt by the Michigan automobile insurance placement facility of an application that complies with this subsection." MCL 500.3172(3). The information required for showing proof of loss varies depending on the benefit sought. *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 596; 648 NW2d 591 (2002). After receiving reasonable proof of loss, an insurer is required to make prompt payment of a claim in accordance with the payment procedures established under the no-fault act. MCL 500.3175(1). Generally, benefits are overdue if they are not paid within 30 days of when the insurer receives reasonable proof of loss. MCL 500.3142(2).

The no-fault act provides for penalty interest and attorney fees when an insurer unreasonably refuses to make timely payment. MCL 500.3142(2) and (4); MCL 500.3148(1). The Supreme Court has explained that the penalty interest and attorney-fees provisions create an "axiom" under the no-fault act that insurers "must pay PIP benefits to claimants promptly and sort out priority and reimbursement issues later." *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 519; 968 NW2d 482 (2021). An insurer must pay 12% interest to the beneficiary for a period in which benefits are overdue. MCL 500.3142(4). Under MCL 500.3172(4):

> The Michigan automobile insurance placement facility or an insurer assigned to administer a claim on behalf of the Michigan automobile insurance placement facility under the assigned claims plan is not required to pay interest in connection with a claim for any period of time during which the claim is reasonably in dispute.

The no-fault act does not define "reasonably in dispute," but the term is also used in the no-fault act's attorney-fees provision.

Under the attorney-fees provision, an attorney is entitled to "a reasonable fee for advising and representing a claimant" in an action to claim overdue benefits. MCL 500.3148(1). Benefits are not overdue during a period in which the benefits are "reasonably in dispute." *Moore*, 482 Mich at 519. The insurer bears the burden of showing that there is a reasonable dispute. *Ross*, 481 Mich at 11. "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id*. Whether the insurer is ultimately determined to be liable to pay the claimed benefits is not dispositive; rather, the relevant inquiry is whether the insurer's delay in making payment was reasonable when the insurer decided to delay payment. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 721; 922 NW2d 662 (2018). "[W]hen the only question is which of two insurers will pay, it is unreasonable for an insurer to refuse payment of benefits. A dispute of priority among insurers will not excuse the delay in making timely payment." *Esurance*, 507 Mich at 519 (quotation marks and citations omitted; alteration in original).

Plaintiff argues that the MAIPF is liable for penalty interest and attorney fees because there was no factual dispute that plaintiff established eligibility for benefits and reasonable proof of loss and that the questions of statutory interpretation the MAIPF raised in the trial court to justify its delayed payment did not put plaintiff's claim in reasonable dispute. The MAIPF has not argued that plaintiff failed to provide reasonable proof of loss. Instead, the MAIPF argues that it was not required under the statute to pay plaintiff's claim until plaintiff had provided the correct, factual answers to every question on the claim application, and plaintiff could not complete the application by stating it did not have the information. The MAIPF stated in the trial court that plaintiff had never actually established eligibility for benefits and that the MAIPF simply made a "business decision" to assign plaintiff's claim on the basis of the likelihood that Patrick was eligible for benefits that plaintiff could claim.

When the trial court decided plaintiff's motion for partial summary disposition, there was little guidance from this Court or the Supreme Court regarding the extent of the efforts a claimant must undertake to adequately support that a particular insurer must pay PIP benefits. Plaintiff argued in the trial court that there should be a standard of reasonableness for determining whether an application is complete that is akin to the reasonable proof of loss standard. The MAIPF argued that the no-fault act does not contemplate a standard of reasonableness for an application to be complete and that a claimant, not the MAIPF, should be responsible for providing information to answer every question on the MAIPF's benefits application before the application can be considered complete. The trial court rule that plaintiff was required to reasonably comply with the MAIPF's requests for information, plaintiff was not required to investigate third parties who were unavailable to complete its application, and plaintiff submitted a completed application in this case.

After the trial court's decision, the Supreme Court decided a case with facts similar to this one and concluded that a claimant must meet the standard of "due diligence" to show entitlement to recover PIP benefits from a particular insurer. *Griffin v Trumbull Ins Co*, 509 Mich 484, 500-501; 983 NW2d 760 (2022). In *Griffin*, the plaintiff was riding a motorcycle and crashed after swerving to avoid a truck that was merging into the plaintiff's lane. *Id*. at 491. The driver of the truck stopped and talked to the police. *Id*. The police recorded the driver's name, home address, and personal telephone number, but did not record any identifying information about the truck. *Id*. The plaintiff's attorney tried to contact the truck driver to get information about the truck's insurer, which was the highest-priority insurer to pay the plaintiff's claims, and the driver refused to cooperate. *Id*. at 491-492. The plaintiff submitted a claim to his own no-fault insurer, the Trumbull Insurance Company ("Trumbull"), and Trumbull said it needed to investigate the claim and held it pending. *Id*. at 492. After not hearing back from Trumbull for several months, the plaintiff submitted claims to every insurer in the order of priority to cover the accident, including the MAIPF. *Id*. at 493. As the one-year mark of the accident approached, the plaintiff filed suit against Trumbull and all the other insurers. *Id*. After the one-year mark passed, Trumbull informed the plaintiff that it denied his claim on the basis that it lacked the information necessary to establish it was the highest-priority insurer that could be identified. *Id*. During discovery in the case, the driver was finally forced to cooperate with the investigation via subpoena, and the parties learned that the driver was driving a work vehicle that was insured. *Id*. at 493-494. Trumbull moved for summary disposition on the basis that it was not the highest-priority insurer that had been identified, and the trial court granted summary disposition in favor of Trumbull. *Id*. The trial court also ruled that the plaintiff could not pursue a claim against the truck's insurer because

the plaintiff had not exercised "reasonable diligence" to find the truck's insurer within the one-year timeframe to claim benefits. *Id*. This Court affirmed that decision. *Id*.

The Supreme Court reversed the decision of this Court. *Id*. at 500-501. The Court concluded that the language of the no-fault act establishes the Legislature's intent that a claimant bears the burden of exercising due diligence to show entitlement to benefits and that due diligence "requires a good-faith effort to fulfill a legal obligation or requirement that could ordinarily be expected of a person under the factual circumstances." *Id*. at 500. A claimant does not need to exhaust every possible avenue of inquiry to show entitlement to benefits. *Id*. at 501. The Court also rejected the notion that a claimant must file suit in order to force the cooperation of a third-party who withholds information. *Id*. at 507. Further, the Court held that the no-fault act's penalty interest and attorney-fees provisions "establish that the insurers who receive a claim for PIP benefits prior to expiration of the limitations period must act diligently when investigating, responding to, and resolving the claim, and the provisions provide a strong financial incentive to do so." *Id*. at 501-502. An insurer is not excused from paying benefits on the sole basis that the parties know a higher-priority insurer exists that they cannot identify because a third-party refuses to cooperate with the investigation, but the lower-priority insurer is not required to pay benefits if another legitimate reason to delay payment exists. *Id*. at 508-509. The Court also affirmed the well-established principle stated by this Court that the no-fault act has a strong preference that an insurer promptly pay claims and then seek reimbursement from another insurer that is found to be higher in the order of priority to pay the claim. *Id*. at 502. The Court concluded that Trumbull could be found liable in the case because Trumbull did not inform the plaintiff that it had stopped looking for the truck's insurer long before the one-year mark of the accident and the gamesmanship of not notifying the plaintiff that he would have to identify the other insurer prejudiced the plaintiff. *Id*. at 509-510.

To show entitlement to penalty interest and attorney fees, plaintiff must first show that it completed its application for benefits. MCL 500.3172(3). In *Griffin*, the Court stressed that determining whether a claimant exercised due diligence is a fact-specific inquiry. *Griffin*, 509 Mich at 501. Under the facts of this case, plaintiff met its burden of due diligence and its application was complete for purposes of MCL 500.3172(3). It is debatable whether, in all cases, an applicant has submitted to the MAIPF a completed application by employing plaintiff's approach of attaching a police report and medical records to an application and merely referring to those documents without providing responsive answers. However, the Supreme Court in *Griffin* implicitly held that a claimant is not solely responsible for providing all the information necessary to determine eligibility for benefits by recognizing that a claimant and insurer have reciprocal duties to investigate a claim and determine the priority of insurers. *Griffin*, 509 Mich at 501-502. Reading MCL 500.3172 and MCL 500.3173a together in light of *Griffin*, the onus is on the MAIPF to tell a claimant what it needs to do to complete its application and recover benefits. The no-fault act contains a two-step process for a claimant to receive PIP benefits through the MAIPF. A claimant must, first, complete an application on a form created by the MAIPF and, second, provide reasonable proof of loss establishing that there are claims that the MAIPF is liable to pay. MCL 500.3172(1) and (3). MCL 500.3172(3) provides that the MAIFP or the insurer it assigns shall provide to claimants in writing the materials required to establish reasonable proof of loss within 60 days of receiving an application. Plaintiff's application was complete because the MAIPF never told plaintiff to take any additional steps to fill out its application and, through the efforts of both

parties, the MAIPF gained all the information necessary to determine the MAIPF was required to pay plaintiff's claim.

Plaintiff submitted its application to the MAIPF on April 6, 2021. On May 12, 2021, the MAIPF sent an e-mail to plaintiff stating that plaintiff must get information from Patrick, and not from a third-party, regarding her address and to answer two specific questions in the application, which were Questions 42k and 45. Plaintiff's response to Questions 42k and 45 in its application were that plaintiff did not have knowledge of the answers to those questions beyond the information contained in the police report and Patrick's medical records. Question 42k asks whether the applicant had permission to use the vehicle involved in the accident, and Question 45 asks for the applicant to provide the names of all the individuals that the applicant resides with and the applicant's relation to those persons.

The answer to Question 42k could have shown that PIP benefits could not be recovered in this case. Coverage by the MAIPF is excluded or limited under several provisions of the no-fault act, which apply generally under the act regardless of whether a claimant maintains his or her own PIP coverage. MCL 500.3173. One such exclusion, which applies to the information sought in Question 42k, is that a person is ineligible for PIP benefits when the person was injured while riding in a vehicle with knowledge the vehicle was "taken unlawfully," which means the vehicle was taken without the permission of the owner. MCL 500.3113(a). Although it was never disputed that Patrick was only a passenger of the vehicle during the accident, a person can still be excluded from PIP benefits under MCL 500.3113(a) when that person was a passenger of a vehicle with knowledge the vehicle was unlawfully taken. *Mester v State Farm Mut Ins Co*, 235 Mich App 84, 88-89; 596 NW2d 205 (1999), overruled on other grounds by *Spectrum Health Hosps*, 492 Mich at 511. It was clear from the police report from the accident that the driver of the vehicle did not own it. Therefore, there was a possibility that plaintiff's failure to provide an accurate answer to this question could have created a reasonable factual dispute regarding whether Patrick was entitled to PIP benefits. However, the trial court record shows that the MAIPF became satisfied with the answer to that question before paying plaintiff's claim. The MAIPF eventually conceded in the trial court that Patrick was not disqualified from recovering benefits on the basis that she was knowingly riding in an unlawfully taken vehicle. In its October 27, 2021 response to one of plaintiff's requests for admission, the MAIPF admitted that Patrick was not disqualified from coverage on the basis that Patrick had unlawfully taken the vehicle involved in the accident.

Patrick's address and the information the MAIPF sought regarding Question 45 of the application were not necessary for the MAIPF to make an initial determination of eligibility for PIP benefits. The MAIPF's argument that it needed to rule out the possibility that Patrick was insured through a member of her household before it could determine eligibility for benefits erroneously conflates eligibility for benefits through the MAIPF with whether the MAIPF was the highest-priority insurer for the loss. Under the four scenarios in which a claimant is entitled to benefits through the MAIPF under MCL 500.3172(1), the MAIPF is only definitively the highest-priority insurer in one of the four scenarios. Because MCL 500.3172(1)(c) and (d) involve situations in which one or more insurers have been identified that are or may be in higher priority to pay benefits than the MAIPF, plaintiff could only have been entitled to benefits if MCL 500.3172(a) or (b) applied to plaintiff's claim. The MAIPF's argument only considers that plaintiff's claim could have been eligible for benefits under MCL 500.3172(1)(a), which provides coverage through the MAIPF when there is no applicable insurance policy. However, MCL

-8-

500.3172(1)(b) provides for coverage through the MAIPF when no higher-priority insurer "can be identified." Plaintiff established that Patrick suffered bodily injury arising from the use of a motor vehicle, there was no evidence that she was disqualified from PIP coverage, and no other PIP coverage was able to be identified. Under those circumstances, plaintiff's claim fit the criteria for payment under MCL 500.3172(1)(b). The fact that plaintiff's claim fell under MCL 500.3172(1)(b) was established no later than October 27, 2021, when the MAIPF admitted that Patrick was not disqualified from coverage. The MAIPF assigned plaintiff's claim on November 19, 2021, and the insurer paid plaintiff's claim on December 2, 2021. Therefore, a period of no less than 35 days passed between when plaintiff had established eligibility for benefits and reasonable proof of loss, so benefits were overdue unless the MAIPF can meet its burden of showing its decision to delay payment was caused by a legitimate question of statutory interpretation.

The unique facts of this case obscure the issue regarding when payment of plaintiff's claim became overdue on the basis of the questions of statutory interpretation raised by the MAIPF to justify delaying payment. Plaintiff made clear in the trial court when it moved to amend its original complaint following the MAIPF's assignment of plaintiff's claim that plaintiff was using this case as a test case, seeking the specific holdings that (1) a healthcare provider is a proper claimant under the no-fault act, rather than a person seeking benefits for or through another, and (2) an application with the MAIPF can be statutorily "complete" when a claimant provides all the information it has, even if it has not provided a definite answer to every question on the application. After the MAIPF agreed to pay plaintiff's claim, plaintiff was explicit that it was pursuing penalty interest and attorney fees in this case to force the trial court to decide the underlying issues of healthcare providers' status as claimants and what constitutes a completed application with the MAIPF. Plaintiff argued that, under the then-state of the law, the MAIPF was free to unilaterally delay prompt payment of claims on those grounds, in violation of the no-fault act, and avoid being held accountable for the unreasonable delay through the assessment of penalty interest and attorney fees. The MAIPF agreed that the issues should be litigated.

The trial court determined that a healthcare provider is a proper claimant and that an application with the MAIPF could be "completed" when a complainant reasonably complied with it, acknowledging that there was no binding precedent requiring those holdings. However, the trial court denied plaintiff's request for penalty interest and attorney fees because the trial court believed the issues presented legitimate disputes of statutory construction that had not yet been decided by this Court. Because plaintiff's requested relief of penalty interest and attorney fees was denied, plaintiff was made an aggrieved party with a right to appeal to this Court. *Garrett v Washington*, 314 Mich App 436, 449-450; 886 NW2d 762 (2016). However, the issues regarding plaintiff's status as a claimant and whether it submitted a completed application are technically not at issue in this case because the MAIPF did not appeal those rulings, and the issues have been resolved in plaintiff's favor by this Court and the Supreme Court.[4] The issue in this appeal is whether the

---

[4] Recently, this Court clarified that the current version of MCL 500.3112, which is applicable in this case, gives health care providers statutory standing to directly bring a first-party action against an insurer to recover PIP benefits, and the health care provider is the real party in interest, i.e., a claimant. *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich App ___, ___; ___

MAIPF can meet its burden of showing that, when the MAIPF decided to delay payment, the actual reason for its delay was reasonable and based on a legitimate question of statutory interpretation. *Nahshal*, 324 Mich App at 721. Although the MAIPF argues on appeal that plaintiff never established eligibility for benefits on the basis of its interpretation of the statute's requirement for a "completed" application, the MAIPF did not take that position in the trial court until well after deciding to pay plaintiff's claim.

The MAIPF's initial proffered reason for delaying payment was not the same as the questions ultimately resolved in this case, and the MAIPF eventually conceded that its initial given reasons were not legitimate under the no-fault act. The MAIPF's explanation given in the trial court for why it was delaying payment was that Patrick's involvement in the application process was a prerequisite to payment and that Patrick was required to sign the application. The MAIPF's motion for Patrick to show cause why she did not appear at her deposition alleged that plaintiff's "application is only partially complete and not signed by Ruby Patrick." In response, plaintiff raised for the first time its argument that Patrick's involvement was not required and plaintiff had the statutory right to file a claim on its own behalf. Approximately a week later, plaintiff filed its original motion for partial summary disposition, arguing that the MAIPF had all the information necessary to establish that plaintiff was entitled to have its claim assigned, the MAIPF was unreasonably delaying assignment on the basis of an erroneous statutory interpretation that only Patrick could submit an application for benefits, and plaintiff was entitled to partial summary disposition on the issue that plaintiff was the valid claimant. In an October 14, 2021 e-mail between the parties' attorneys that was attached to the MAIPF's response to plaintiff's motion to amend its original complaint, defense counsel stated that the MAIPF maintained the position that it could not assign a claim until the MAIPF had been in contact with Patrick. Plaintiff's counsel responded that plaintiff's position was that, under the statute, plaintiff could claim benefits without Patrick's involvement. Aside from the fleeting reference to the fact that plaintiff's application was incomplete when the MAIPF took the position that Patrick had to sign and submit the application, the MAIPF did not bring up the issue that plaintiff failed to submit a completed application until its November 29, 2021 response to plaintiff's motion to amend its complaint.

Once the MAIPF filed its admission that Patrick was not disqualified for benefits on October 27, 2021, the MAIPF had admitted in the trial court that Patrick was both assumed uninsured and not disqualified from coverage. More than 30 days passed between when the MAIPF admitted that coverage for Patrick's injuries was not disqualified and when the MAIPF notified plaintiff that the MAIPF delayed payment because plaintiff's application was incomplete, rather than because of Patrick's noninvolvement. More importantly, nearly three months passed between when the MAIPF initially took the position in the trial court that it was delaying payment because only Patrick could submit the claim and when the MAIPF put plaintiff on notice that the MAIPF supposedly delayed payment because plaintiff's application was incomplete and plaintiff could submit an application without Patrick's cooperation. The MAIPF acknowledged in its response to plaintiff's motion to amend its original complaint that it is possible for a healthcare

---

NW2d ___ (2022) (Docket Nos. 358170 and 358171); slip op at 3. As discussed, the Supreme Court decided the issue of a claimant's burden to establish entitlement to PIP benefits in *Griffin*, 509 Mich at 500-501.

provider to submit a completed application, but argued that, in this case, the MAIPF "demanded" that Patrick fill out the application because she would have the knowledge necessary to fill in the missing information in plaintiff's application. At the hearing on plaintiff's motion, the MAIPF stated that it had a general preference that the injured person fills out the application because he or she will have the complete information and that plaintiff's application was incomplete because it lacked information on Patrick's "resident relatives, insurance, medical insurance, who owned the vehicle," and other minor issues the MAIPF did not specifically identify. The MAIPF did not argue that plaintiff's answering questions in the application by referring to the attached materials was an insufficient way to fill out an application until it filed its March 4, 2022 response to plaintiff's amended motion for partial summary disposition.

Much like the situation in *Griffin*, the MAIPF's actions prejudiced plaintiff's ability to claim timely payment. *Griffin*, 509 Mich at 509-510. The MAIPF's initial e-mail to plaintiff instructed plaintiff that it had to receive the answers to Questions 42k and 45 from Patrick and not a third-party. However, the name and address of the owner of the vehicle involved in the accident was listed on the police report, so both parties had the information necessary to investigate the issue whether the vehicle was unlawfully taken from the outset of plaintiff's claim. After the initial e-mail, the parties engaged in extensive efforts to secure Patrick's cooperation, and neither was able to do so. The MAIPF never instructed plaintiff to take any other steps to complete its application, and the MAIPF did not even acknowledge that it would accept an application from a healthcare provider without the cooperation of the injured person until after it had already paid plaintiff's claim.

Whether an insurer reasonably delayed paying a claim is a mixed question of law and fact. *Ross*, 481 Mich at 7. The MAIPF did not raise a legitimate question of statutory interpretation and its decision to delay payment was unreasonable under the facts of this case. The proposition that the injured person's cooperation is required before an application can meet the threshold of completeness is not supported by the plain language of the statute. The MAIPF has not pointed to any authority suggesting such a requirement exists. Rather, on the basis of defense counsel's in-court statements and e-mail correspondence between the attorneys, the MAIPF seems to have taken the position that contact with the injured person is required before benefits can be paid out of a desire for a gatekeeping function for collecting benefits from the MAIPF in order to limit the MAIPF's overall financial exposure for paying PIP benefits. This argument lacked merit. The MAIPF's belated argument that plaintiff's application did not fulfill the statutory requirement that a claimant must submit a completed application also did not raise a reasonable question of statutory interpretation. The MAIPF essentially argued that it was delaying payment on plaintiff's claim because plaintiff had not performed the ministerial task of submitting to the MAIPF information that the MAIPF already had. Further, the MAIPF never asked plaintiff to take that step. There is nothing in the statute to suggest that the MAIPF would be outside its authority to require a claimant to resubmit an application that is filled out with more detail after the initial submission of the application. However, that is not what happened in this case. The MAIPF began processing plaintiff's claim without instructing plaintiff to amend its application. Therefore, the MAIPF unreasonably delayed paying plaintiff's claim because plaintiff exercised due diligence in completing its application.

The MAIPF is liable to plaintiff for penalty interest and attorney fees beginning from the time the MAIPF e-mailed plaintiff instructing plaintiff to gain all of the information to support its

claim from Patrick. Although there is no explicit guidance from the statute regarding when interest and attorney fees begin to accrue under circumstances like this case, the date of the MAIPF's e-mail is the most reasonable time because, on that date, plaintiff's claim had been submitted for more than 30 days, the MAIPF never disputed the reasonableness of the proof or amount of plaintiff's loss, and that was the date the MAIPF's actions began to prejudice plaintiff by taking an unreasonable legal position that plaintiff could not gather information from third parties to help determine whether Patrick was ineligible for PIP benefits. It is also consistent with the axiom that an insurer should promptly pay claims and seek reimbursement if it was not liable to pay benefits. *Esurance*, 507 Mich at 519.

Reversed in part and remanded for further proceedings. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly